# The Chartiers and Robinson Turnpike Company *versus* McNamara.

1. A paper required to be stamped cannot, under the Act of Congress of July 13, 1866, be given in evidence if unstamped.

2. The want of a stamp is a disqualification of the paper in the hand of the delinquent to prevent its use until he pays the tax.

3. The exclusion of the paper as evidence applies to State as well as Federal courts.

4. The Act of 1866, excluding as evidence an unstamped paper, is not a rule for regulating evidence, but is a disqualification of the instrument for want of payment of tax.

5. The various Acts of Congress relating to revenue and taxation considered and compared.

[Chartiers and Robinson Turnpike Co. v. McNamara.]

November 4th 1872.  Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the District Court of *Allegheny county :* No. 70, to October and November Term 1871.

This was an action of assumpsit, brought August 9th 1871, by Bridget McNamara against The Chartiers and Robinson Turnpike Road Company.

The declaration was in the common counts, and the cause of action was work done by plaintiff in stoning the turnpike road of the defendants.

The plaintiff having given evidence to sustain her claim, the defendant offered in evidence a written contract, dated April 24th 1868, between the company and one John Glen and the defendant, " for the purpose of showing a specific contract to do the work for a specific sum, &c."

The agreement was not stamped, and the offer was objected to for that reason.

The court, Hampton, P. J., rejected the offer and sealed a bill of exceptions.

The verdict was for the plaintiffs for $488.90.

The defendants removed the record to the Supreme Court, and assigned for error the rejection of their offer of evidence.

. *L. K. Duff* and *G. Shiras, Jr.,* for plaintiffs in error, referred to McGovern *v.* Hoesback, 3 P. F. Smith 176 ; Carpenter *v.* Snelling, 97 Mass. 452 ; Green *v.* Holway, 101 Id. 243 ; Sammons *v.* Holloway, 21 Michigan 162 ; Lathurn *v.* Smith, 45 Ill. 29; Craig *v.* Dimmick, 47 Id. 308 ; Bunker *v.* Green, 48 Id. 243 ; Griffin *v.* Ranney, 35 Conn. 239 ; The People *v.* Gates, 43 N. Y. 40 ; Bumpuss *v.* Taggart, 26 Ark. 398 ; Duffy *v.* Hobson, 40 Cal. 240 ; Daily *v.* Coper, 23 Texas 815.

*S. A. McClung*, for defendant in error, referred to the Acts of Congress of June 30th 1864, and July 13th 1866 ; McCulloch *v.* Maryland, 4 Wheaton 316 ; U. States *v.* Fisher, 2 Cranch 358 ; License Tax Cases, 5 Wallace 462 ; Morris *v.* Morris, 44 Miss. 441 ; Corrie *v.* Billin, 23 La. Ann. 250.

The opinion of the court was delivered, January 6th 1873, by Agnew, J.—It appears in the bill of exceptions in this case, that the defendants offered in evidence a special written contract, dated April 24th 1868, for the performance of the work done by the plaintiff.  Objection to its reception in evidence was made " because the paper is not stamped as required by the Act of Congress."  The paper being unstamped, the court rejected the evidence.  The single question is whether the Act of Congress justified the court in rejecting the paper as evidence.  Under this

[Chartiers and Robinson Turnpike Co. *v.* McNamara.]

bill, no question arises upon the validity of the written contract. Had the paper gone in evidence, that point could have been fairly open to discussion, under the 9th section of the Act of Congress of July 13th 1866, amendatory of the 158th section of the Act of June 30th 1864, declaring a paper not stamped "with intent to evade the provisions of the act," invalid and of no effect: Laws U. S., 1866, p. 303–4; Ibid. 1864, p. 148. The inquiry under this bill is, therefore, confined to the amendment of the 163d section of the Act of 1864, contained in the 9th section of the Act of 1866 (p. 149), in these words: "That hereafter no deed, instrument, document, writing, or paper required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be received or admitted, or used in evidence in any court, until a legal stamp or stamps, denoting the amount of the tax, shall have been affixed thereto as prescribed by law." This provision gives rise to two questions, the first upon the meaning of the enactment; the second, upon the power of Congress to make it.

It has been held in Massachusetts and Michigan, that the provision applies only to the Federal and not to the state courts: Carpenter *v.* Snelling, 97 Mass. 452; Lawrence *v.* Halloway, 21 Michigan 162. It seems to us this interpretation of the Act of Congress was not well considered, and is contrary to the language and the design of the act. The words are, " or used in evidence in *any* court." Language could not be broader, and no exception or qualification is to be found in the act, while the design of Congress makes the meaning perfectly clear. The paper is not to be admitted or used in evidence, "until a legal stamp, or stamps, denoting the amount of the tax, shall have been affixed thereto, as prescribed by law." Thus the purpose is plain to prevent the use of the unstamped paper, so long as it remains without payment of the tax or duty upon it. This is simply a disqualification of the instrument in the hands of the delinquent, to prevent its use, until he pays the tax. If " any court," mean only the Federal courts, the design of Congress is totally frustrated, as will be seen at once upon referring to schedule B, containing the subjects of the stamp tax, numbering over forty classes of " deeds, instruments, documents, writings, and papers," used in ordinary business. They will be found to comprehend all those numerous writings of every kind, which enter into the domestic affairs of the people, and the business of every-day life, in the very bosom of the state—a few for example : agreements, checks, orders, bills, bonds, certificates, deeds, mortgages, policies of insurance, leases, powers of attorney, protests, receipts, and legal documents. Now, for one such paper which can be sued upon in the Federal court, by reason of ex-territorial citizenship or other ground of Federal jurisdiction, nine hundred and ninety-nine others can never reach a Federal court,

[Chartiers and Robinson Turnpike Co. *v.* McNamara.]

and must be prosecuted in the courts of the state, where they were made, and where the parties reside. This law is a revenue law, and of what use is the disqualification of the paper until the stamp duty is paid, as a means of enforcing payment, unless "any court" means state courts, as well as Federal? Other portions of the section confirm this interpretation. The United States have no offices for the recording of deeds, mortgages, powers of attorney and other documents, yet the paper is forbidden to be *recorded* till the proper stamp tax be paid. The word "recorded" cannot be separated from its immediate context, the words following it, viz: "or admitted, or used, in evidence in any court," both run together, are part of the same sentence, and interpret each other. If "recorded" applies, as it must, to state offices of record, "any court" applies with equal force to state courts. Then, also, the words "until a legal stamp or stamps denoting the amount of tax, shall have been affixed thereto, *prescribed by law*," refer to all the different kinds and amounts of stamps in schedule B, just as clearly as the words "deeds, instruments, documents, writings and papers," refer to their various kinds in that schedule, and thus bring us back a second time to the entire body of writings and papers in use among the people within the state.

How can it be said, in view of all these provisions, the subjects of the tax and the evident design of Congress, that the words "any court," thus used in the broadest form and fullest sense, without qualification or exception, are to be limited to the Federal courts, and thereby to defeat the enforcement of the payment of the tax, the only real purpose of the provision? When it is said, as in Carpenter *v.* Snelling, *supra*, that Congress cannot pass laws regulating the competency of evidence in the trial of causes in the several states, the purpose of this provision is incorrectly stated. The abstract proposition is true, but it is misapplied. The purpose of Congress was not to make rules of evidence, but to stamp the instrument of evidence, with a disqualification, which will prevent its use as evidence until the delinquent has paid his tax. If, then, in legislating upon proper subjects of Federal power, so as to enforce the execution of the rightful power of Congress, it be said Congress cannot affix to the subject of the exercise of its clearly granted powers, qualities which must be recognised by state courts, I deny the assertion, and oppose to it the second section of the sixth article of the Federal Constitution, which makes such a law the supreme law of the land, binding on the judges in every state. If in legislating on a proper subject of Federal power, Congress declare a forfeiture, for instance of smuggled goods, with intent to evade payment of the duties on them, the state courts are clearly bound to recognise the title acquired by forfeiture in whosesoever hands the goods may be. When the subject of a law is fairly within a Federal power given in the Consti-

[Chartiers and Robinson Turnpike Co. *v.* McNamara.]

tution, Congress has express power to pass all laws necessary and proper to carry the given power into execution. This is the test of the competency of this evidence. The instrument being a proper subject of the Federal power to tax, it is just as clearly competent for Congress to affix a disability to the unstamped paper that will compel the payment of the tax. The propriety, as well as the necessity, of the disability in this case, is so obvious, it does not admit of a serious question. The writing is a thing done between private persons, unseen by the eyes of revenue officers. Neither party has a motive to reveal it for taxation, for the tax enhances the price of an article of sale, and the expense of every pecuniary transaction evidenced by a writing. Neither is interested in inflicting the penalty upon the other. The very touchstone of the value of the writing to the party who claims under it, is his ability to put it in evidence. It is just here the law touches the writing with its power, and makes it useless to the party until he performs his duty, by paying the tax upon it. What can be more proper, and, indeed, more just? He makes his contract under the law and subject to it. He knows, or is presumed to know, his duty, and should perform it. If he fail from real ignorance, or for reasons which show that he did not intend to defraud the revenue, the instrument is not invalid, and he has but to procure the writing to be stamped, and can then use it in evidence. Then on what principles of reason, or of sound constitutional law, can a state court, subordinate in this respect by the Federal Constitution, disregard the Act of Congress, and receive the disqualified paper in evidence, when the prohibition concerns the rights of the superior government, and is essential to its power to collect the tax? The taxing power being a clear Federal grant of power, and the disqualification affixed to the writing as an instrument of evidence, being clearly proper to compel payment of the tax, the case falls directly under that provision of the Federal Constitution which makes the law supreme, "and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

We come next to the question of power, if, indeed, there can be any question in a matter so plain. But courts in other states have denied the power, and their decisions have been cited to us. I shall, therefore, state our views briefly. I heartily concede the doctrine of state rights in all those things wherein state rights have been withheld from the Federal Government, and are by the Constitution itself reserved to the states, or the people thereof. In all that concerns the personal happiness and freedom of the citizen, the state is his natural protector, and I would cling to her, therefore, in whatever belongs to her reserved and ungranted powers. I have said heretofore, that the doctrine of state rights, pushed to excess, culminated in civil war, while the rebound,

caused by the success of the Federal arms, threatens a consolidation equally serious; and, therefore, that the land-marks of the Constitution, as planted by Chief Justice Marshall and his associates, on the solid ground of reason, and a due regard to the rights of the states and of the Union, constitute the only safe guides of decision: Craig *v.* Kline, 15 P. F. Smith 399. But when, as here, a clear case of Federal power comes before us, the paramount duty we owe, as state judges, to the Federal Constitution, requires that we should uphold the exercise of the Federal powers, as a matter of duty and conscience.

The power of Congress " to lay and collect taxes, duties, imposts and excises," is the first great power conferred in the enumeration of powers found in the eighth section of the first article of the Constitution of the United States, and immediately precedes, as its true purpose and end, the power " to pay the debts and provide for the common defence and general welfare of the United States." The nineteenth clause in the same enumeration, declares that Congress shall have power " to make all laws which shall be necessary and proper for carrying into effect the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or any department or officer thereof."

At a very early day Congress, under the taxing power, passed a stamp tax act, on the 6th of July 1797, entitled " An Act laying duties on stamped vellum, parchment and paper :" 1 U. S. Stat. at Large, p. 527. The thirteenth section contains this clause: " And no such deed, instrument, or writing, shall be pleaded or given in evidence in any court, or admitted in any court to be available in law or equity, until it shall be stamped as aforesaid." Next came the Act of 2d August 1813, entitled " An Act laying duties on notes of banks, bankers and certain companies; on notes, bonds and obligations discounted by banks, bankers and certain companies; and on bills of exchange of certain descriptions :" 3 U. S. Stat. at Large, p. 77. The seventh section begins with this provision: " That no instrument or writing whatsoever, charged by this act with the payment of a duty as aforesaid, shall be pleaded or given in evidence in any court, or admitted in any court to be available in law or equity, unless the same shall be stamped or marked as aforesaid." This section contained a further provision, enabling the party, in cases of omission, to pay the stamp duty to the collector, and thereby to establish the efficacy of the instrument. Similar provisions are made in existing laws. Thus, it appears that the exercise of the power in question, in its most rigid form, is an old practice of the government, sanctioned by those contemporary with the formation of the Constitution, and familiar with the relations between the states and the Federal government. Added to this is the analogous legislation exercised from the first year of the organization of the government. Thus

[Chartiers and Robinson Turnpike Co. *v.* McNamara.]

the Act of July 31st 1789, to regulate the collection of duties, in the twelfth section, provides that goods, wares and merchandise, landed without the collector's permit, shall be forfeited, and may be seized by the officers of the customs; and if of the value of $400, the vessel, tackle and furniture shall be subject to like forfeiture and seizure: 1 U. S. Stat. at Large, p. 29. The Act of June 4th 1794, for the collection of the internal revenue upon distilled spirits, stills, wines and teas, in the second section, provides for the forfeiture of the spirits distilled, and of the spirits itself: 1 U. S. Stat. at Large, p. 379. Then there are the numerous statutes relating to the coasting trade, tonnage duties, the embargo, &c., forfeiting both vessel and cargo; and various statutes on the subject of the internal revenue, forfeiting the subjects of taxation for non-payment of the taxes and excises; and decisions thereupon without number: see Brightly's Federal Digest, pp. 127–8, 278, 487, 736, 803. This power to forfeit the subject of the tax, duty, impost or excise, as a consequence of evasion or non-payment, is undeniable, for the reason that, being in the exercise of the express powers of the Constitution, and the lawful means of carrying these powers into effect, they are within the clearly defined powers granted to the Federal government. Now, it is perfectly obvious that the evidence of the title is not more sacred than the very thing itself. If the latter can be forfeited for delinquency, on what principle can it be affirmed that the former cannot be reached to compel payment? Certainly the paper evidencing the owner's right to money, or other property, is quite as much within the power of regulation to secure payment as the thing itself is, of which it is the mere type. The argument which affirms that it cannot be so regulated places the incident on higher ground than its principal, and makes the shadow more sacred than the substance.

It is said, in some of the cited cases, that the exercise of this power enters within the domain of the state, and interferes with its internal affairs. Granted; but what logical consequence follows? Certainly not that the Act of Congress is unconstitutional and invalid. From the very nature of the power to lay taxes and excises, its exercise comes right into the heart of the state, and visits its citizens in all their most private relations, estates and property. It is not more searching in its operation than the power to establish a uniform system of bankruptcy, to return fugitives from justice and labor, to call out the militia, to regulate the value of money and fix a standard of weights and measures, and to establish post-offiices and post-roads; yet all these, admittedly, enter within the state, and touch most intimately its business and people. Like the taxing power, these are among the express powers of Congress, and their rightful exercise within the states is, therefore, undoubted. A notable instance of the exercise of Federal power within

[Chartiers and Robinson Turnpike Co. *v.* McNamara.]

the bosom of the state is that discussed in the United States *v.* Fisher, 2 Cranch 258, under the Act of Congress giving priority in payment to the claims of the United States, out of the estates of decedents. C. J. Marshall there discussed and settled the interpretation of the nineteenth clause of the eighth section of the first article, conferring the power to pass necessary and proper laws to carry the main powers into effect. In that case, from the duty of the United States to pay their debts, is inferred the power of preserving their own claims as a means of paying debts; and from this was inferred the further power of declaring the claims of the United States first liens on the estates of decedents, thereby entering into the most sacred trusts of the state herself, in which she holds the property of the dead, and changing the order of distribution of that property, placed upon it by state legislation. This right of priority of the United States has been conferred upon the sureties of debtors by way of subrogation.

Without extending the argument unnecessarily, the license tax cases reported in 5 Wallace's U. S. Rep. 462 bear more directly upon the question of power in this case, and, in effect, settle it. It seems to us very clear that the provision of the Act of 1866, which excludes an unstamped writing or paper from record, and as evidence in any court until the tax be paid, is not a rule for the mere regulation of evidence, but is a disqualification attached to the document, making it incompetent to fulfil its purpose as an instrument of evidence, until the stamp duty is paid; that it is a provision to enforce the payment of the tax of the most necessary kind, and binding on all courts; and that it falls clearly within the express powers of Congress to levy taxes, duties, imposts and excises, and to make all laws necessary and proper to carry the taxing power into execution.

The judgment is therefore affirmed.

Thompson, C. J., dissented, upon the ground that the legislation alters a rule of evidence belonging to the state tribunals.

Sharswood, J., dissented.