# Bryan *v.* First National Bank of McKees Rocks, Appellant.

*Banks and banking—Depositors—Checks.*

When a bank gives to one of its depositors credit on his pass book for checks drawn on it by another of its depositors, having on its books ample funds to pay them, such credit is equivalent to a payment to the first depositor in cash of the amount of the checks.

*Banks and banking—Unstamped checks—Evidence.*

Unstamped checks may be used in evidence where they are not offered to sustain the plaintiff's claim or defendant's defense.

Where a bank accepts from a depositor unstamped checks, drawn by another depositor, and credits the first depositor's account with them, but subsequently charges off the credit, it cannot when sued by the first depositor object to the offer of the checks in evidence, because of their unstamped condition.

*Banks and banking—Checks—Gambling contract.*

Where a bank receives a check from one of its depositors drawn by another depositor, and gives credit for the same, and subsequently after ascertaining that checks deposited by the second depositor had not been paid, charges off the credit given to the first depositor, and the latter sues the

bank, the bank cannot allege as a defense that the checks deposited by the first depositor had been given to him in a gambling transaction.

Argued Nov. 6, 1902. Appeal, No. 161, Oct. T., 1902, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1901, No. 37, on verdict for plaintiff in case of Miles Bryan v. First National Bank of McKees Rocks. Before MITCH-ELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Assumpsit against a bank for wrongfully charging off on its books a credit given to a depositor. Before COLLIER, J.

The facts appear by the opinion of the Supreme Court.

At the trial the court refused defendant's offer to prove that the checks deposited by the plaintiff represented a gambling transaction. [4]

The court admitted in evidence the two checks, although it appeared that they were not stamped. [5]

The court charged in part as follows :

[In this case, as we understand the law, the plaintiff is entitled to the amount he claims, unless the defendant satisfies you that the plaintiff acquiesced in charging back this money represented by these checks. Now, that is the only question in the case. The bank, as between its depositors, in accepting a check and putting it to another depositor's account, as between depositors of the same bank, it is just precisely as if the money was paid to the party himself and placed to his credit.

That being the case, the plaintiff would be entitled to recover in this case, unless the defendant has satisfied you that the plaintiff acquiesced in charging it back. Upon that there is a great deal of disputed testimony; it is not all on one side by any means. The defendant called a number of witnesses to show that after the bank discovered that the checks of Meyers & Company did not go through the clearing house and were not good for anything, and that McCann's account would not be sufficient to pay these checks deposited by the plaintiff, they told Mr. Bryan of the difficulty, the mistake or blunder, if you choose to call it that, that they had made, and that they proposed, as it was only a short time afterwards, on Monday, to rectify the mistake and charge it back, and they allege that Mr.

Bryan assented.    Now, it is not necessary to say in words, I assent; you can acquiesce by your actions.    Some of the witnesses say that he said " All right; " others state, that he agreed that they should balance his book.    They took his bank book and balanced it and put these checks on there as having been charged to him, and they allege that he went away satisfied, made no objection then.    That is their testimony.    If he did that he could not recover, because he could have stood upon the mistake of the bank.    A bank is bound to know that a check is good when they tell you a check of one of their own depositors is good, but if they make a blunder the depositor may agree that they may rectify that blunder, and if they balanced the book and give it to him and told him that they charged back the checks and he took his book and made no objection, that estops him from recovering against the bank under the circumstances.    That is the theory of the defendant, and they have testimony that tends to show that.

On the other side, the plaintiff denies that entirely.    He says he presented these checks as money, that they put them to his account as money and he went away satisfied; he says that it was an ordinary and usual transaction with the bank and that when he was told of the mistake he considered it their mistake. He had taken the checks probably for a valuable consideration, we do not know what for; it might have been for a debt.    He says he only wanted to get the checks to show to his attorney, and that they balanced his book and that he never saw that the checks were charged against him until he got down in town, and that he never acquiesced in it or agreed to it at any time.

Now you have both sides of the case, and it is not for the court to descant on the evidence or say on which side of the case the weight of testimony is ; that is for the jury.    You twelve men will use your common sense in passing upon the testimony.    Just ask yourselves when you get to your room the question, did the plaintiff acquiesce, silently or otherwise? It is not necessary to say I will agree to it, if he acquiesced by his acts in having them rectify the mistake they made about their account with McCann.    If he did acquiesce and you are satisfied of that by the weight of the evidence, you will find for the defendant, because he is estopped in justice and law from

trying to make the bank pay when they made a mistake and he was told of it and acquiesced in it. But if that is not made out by the weight of the evidence, if you believe he did not acquiesce and did not agree to it, but demanded his rights all the way through, you should find for the plaintiff for the amount claimed as presented by counsel. That is all there is in this case, and all there could be if you tried it a month.] [6]

Verdict and judgment for plaintiff for $2,301.01. Defendant appealed.

*Errors assigned* were (4, 5) rulings on evidence, quoting the bill of exceptions ; (6) above instruction, quoting it.

*Joseph A. Langfitt*, with him *H. W. McIntosh, William A. Stone* and *Stephen Stone*, for appellant.—The checks being un-stamped were not evidence : Chartiers & Robinson Turnpike Co. v. McNamara, 72 Pa. 278.

Obligations and checks given on a gambling transaction have always been held void, even in the hands of an innocent holder for value: Unger v. Boas, 13 Pa. 600 ; Harper v. Young, 112 Pa. 419 ; Durr v. Barclay, 8 Pa. C. C. Rep. 285 ; Dempsey v. Harm, 9 Cent. Repr. 615 ; Peterson v. Union Nat. Bank, 52 Pa. 206 ; Thorne v. Travellers Ins. Co., 80 Pa. 15 ; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233.

*W. H. S. Thompson*, with him *Frank Thompson* and *H. S. Lydick*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 5, 1903 :

On November 9, 1900, John J. McCann drew to the order of Miles Bryan and delivered to him a check on the First Na-tional Bank of McKee's Rocks, Pennsylvania, for $956. The day following he gave Bryan another check on the same bank for $1,164.75. On that day Bryan, who was also a depositor in the bank on which the checks had been drawn, went to it and made a deposit of $2,357, composed of these two checks and other small checks and some cash. At the time he made this deposit the books of the bank showed a credit in favor of McCann of $3,276. The two checks which he had given to Bryan, amounting to $2,120.75, after having been passed to the latter's credit as part

of his deposit of $2,357, were stamped "paid" by the bank. Part of the amount standing to the credit of McCann on the books of the bank was made up by his deposit of two checks drawn to his order by E. A. Meyers & Company. The first, dated November 9, 1900, for $1,527.35, was deposited the same or the following day, and the second, given November 10, 1900, was for $861.70. After Bryan had received credit for the two checks McCann had given him, and which had been stamped "paid," the bank learned that the checks of E. A. Meyers & Company to McCann, which had been deposited to his credit, were not paid by the Freehold Bank, on which they had been drawn, and they were subsequently returned, marked "no funds." Bryan made his deposit and received the credit in his pass book on Saturday, and on the following Monday the bank charged the two McCann checks back to his account, returning them to him. Subsequently this suit was brought to recover from the bank the amount so withdrawn by it from appellee's account, on the ground that, having given him credit for the two checks drawn by McCann on itself, with ample funds in its hands to meet them, according to its own books, when they were presented, it had made practically a cash payment to him, which it could not recall without his consent. The trial judge entertained this view, and, in an adequate charge, submitted to the jury, as the only question for their determination, whether the plaintiff had agreed that the money represented by the McCann checks should be charged back to his account. The jury found that he had not so agreed, and the verdict was in his favor for the amount claimed.

When the bank gave to Bryan, one of its depositors, credit on his pass book for the two checks drawn on it by another of its depositors, having on its books ample funds to pay them, such credit was equivalent to a payment to Bryan in cash of the amount of the checks. This has never been questioned with us from the time it was first decided in Levy v. Bank of the United States, 4 Dall. 234, and 1 Binn. 27, and it cannot be pretended that, if an actual cash payment had been made to Bryan by the bank, there could be a recovery back from him, if unwilling to pay it.

The two legal positions taken by the defendant, which the court below refused to sustain, were, first, that the court

ought not to have admitted in evidence the two checks drawn by McCann in favor of Bryan, because they had not been stamped as required by the act of congress; and, second that the defendant ought to have been allowed to prove that these checks " were given in a gambling transaction, commonly known as a ' bucket shop ' business, and conducted by E. A. Meyers & Company, with John J. McCann as an interested party therein, with full knowledge of the plaintiff in this case, who dealt with McCann, and through him with Meyers & Company in carrying on that bucket shop business contrary to public policy."

As to the first position, appellant seems to overlook the fact that this suit is not on the checks. The plaintiff could not sue on them. As a holder of checks on a bank, drawn by one having funds in it to meet them, he could not sue it: Saylor v. Bushong, 100 Pa. 23; First National Bank of Northumberland v. McMichael, 106 Pa. 460 ; First National Bank v. Shoemaker, 117 Pa. 94 ; Maginn v. Dollar Savings Bank, 131 Pa. 362.

The plaintiff sues to recover money which the bank had paid him by depositing it to his credit and then took from him without his consent. This is the substance of his averment in his statement. The checks were not offered in evidence as the basis of his claim, or as instruments upon which he had sued. His case was complete without them, for his pass book showed the credit given him by the bank. Knowing that the drawer of these unstamped checks had, according to its own books, money in its hands to pay them, it received them as money from Bryan and gave him credit for them. Instead of complaining of them now as not having been stamped, it ought to have refused to pay them when presented, for that was its duty under a penalty ; but it paid them. The act of congress was intended for no such case. It did not prohibit the offer in evidence of unstamped checks as such. These were offered, not to establish and sustain the plaintiff's claim, for, as stated, it had been established by the bank's entry in his pass book of so much cash deposited by him and withdrawn by the bank without his consent. The prohibition of the act of congress was upon the offer of checks as evidence when relied upon as valid instruments for the purpose for which they were drawn,

and was not that it could not be shown what use had been made of them by parties against whom they could not be enforced by the holders.   If, as in this case, the bank saw fit to pay unstamped checks, the act of congress never intended that it could say the checks had not been paid and that the money represented by them was still in its hands, because the checks had not been stamped.   In Chartiers and Robinson Turnpike Company v. McNamara, 72 Pa. 278, the instrument rejected by the court, because it had not been stamped in accordance with the act of congress, was one upon which the defendant relied as the real contract between him and the plaintiff.   In other words, it was the instrument upon which its defense depended; such is not the case here.

The checks given by McCann may have been drawn in settlement of marginal deals, but he did not say they should not be paid.   He gave them, intending that they should be paid, and the bank upon which they were drawn would now become the quickener of his unwilling conscience for the purpose of saving itself from the consequences of what may have been its own mistake in giving him credit for the checks of E. A. Meyers & Company.   Even the ordinary gambler is not required to get the permission of the bank with which he keeps his account to withdraw his money to pay his gambling debts, regarded by him, as a rule, as obligations of honor.   This is about the position of the appellant as we understand it and as the court below must have understood it.

Judgment affirmed.