## CUTTELL v. FLUENT.
### No. 9078.

Circuit Court of Appeals, Eighth Circuit.
Aug. 28, 1931.

R. W. Zastrow, of Charles City, Iowa, for appellant.

J. C. Campbell, of Charles City, Iowa (William Butts, of Rockford, Iowa, and Campbell & Campbell, of Charles City, Iowa, on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

This is an action seeking to recover an alleged trust fund which came into the hands of the receiver of the First National Bank of Rockford, Iowa, when it was closed by the Comptroller of the Currency on the 23d day of February, 1929. On March 26, 1926, a draft on the Minnesota Rural Credit Bureau for $13,500 payable to the administrator of the estate of Henry M. Cline, deceased, was held by said administrator. To carry out an agreement between the widow and heirs, that the widow should receive the interest on $12,-

500 of this sum during her lifetime, the administrator made an application for and the district court of Iowa authorized him to deposit $13,000 in the First National Bank of Rockford, Iowa. The order by the court which was administering the estate provided, "Said fund to be treated as a special deposit and bond to be given in the sum of $13,000.-00 by said bank." This order was shown to the president and cashier of the Rockford bank and the requisite bond was furnished. At the same time and on May 1, 1926, the administrator delivered the draft for $13,500 to the bank, receiving credit for $12,500 and the balance of $1,000 in cash. The deposit was made in the savings department of the bank and the administrator was given a savings passbook showing a deposit of $12,500. The savings account was of the usual character and showed withdrawals of interest on three different occasions prior to the closing of the bank. The draft that was deposited with the First National Bank on the 1st day of May, 1926, was on this same date sent to its reserve or correspondent bank, the First National Bank of Chicago, and on the 3d day of May, 1926, the amount of the deposit was there credited to the First National Bank of Rockford, Iowa. How long the proceeds were left in the Chicago bank does not appear, except that by October 28, 1927, the account of the Rockford Bank with the Chicago bank was overdrawn. When the draft was credited to the Rockford bank on the books of the Chicago bank the Rockford bank had with the Chicago bank $26,868.50.

At the time the bank's doors were closed it had $2,907.45 in cash which came into the hands of the receiver, and it had in cash at all times after May 1, 1926, to the date when it closed at least $2,510.65.

Notwithstanding the express limitation on the deposit that the same should be a special one, the administrator made a general deposit of $12,500 of the funds in his hands in the savings department of the bank. The deposit then was made in violation of the order of the court that it should be special and this violation was known to both the administrator and the bank.

Although in Iowa an administrator or executor may rightfully deposit money belonging to an estate in a solvent bank, yet where such a deposit as in this case is wrongful a trust may be created thereby and, the other elements existing, a preference would be acquired by the cestui que trust. Leach v. Beazley, 201 Iowa, 337, 345, 207 N. W. 374, 378. The parties do not seriously contest the

trust relationship. The arguments are directed in the main on the question of augmentation and tracing of the trust funds.

The law with reference to the recovery of trust funds held in a national bank after insolvency is well settled in this circuit. The leading case of Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593, 604, lays down pertinent rules, as follows:

"It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver. * * *

"Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming to the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, * * * as trust property, because the legal presumption is that he regarded the law and neither paid out nor invested in other property the trust fund, but kept it sacred. * * *

"But checks of third persons on the bank with which they are deposited which are paid by crediting the bank and charging the drawers on its books fail to increase the cash in its possession and form no basis for a preferential payment to the depositor. * * *

"Moreover, the deposit of checks of third persons which are credited to the depositor and used by the bank to pay its debts bring no money into its fund of cash and form no foundation for preferential payment to the depositor. * * *

"Again, checks of third parties deposited with a bank credited to the depositor and collected through a clearing house lay no foundation for a preferential payment, in the absence of proof of the actual balance of cash the bank received on account of them, for they may have been and usually are used in whole or in part to discharge the debts of the bank. * * *"

■ The fund into which trust funds are sought to be traced in this case is the cash that was in the bank at the time it closed its doors in the sum of $2,907.45. The question for determination is: Has the complainant traced said draft or the proceeds therefrom to and into this fund? Upon deposit with it the Rockford bank became the absolute owner of the draft and became a debtor of the administrator for part of the purchase price, namely, $12,500. Security Nat. Bank v. Old Nat. Bank (C. C. A.) 241 F. 1; In re Ruskay (C. C. A.) 5 F.(2d) 143; In re Gubelman (C. C. A.) 10 F.(2d) 926; Burton v. U. S., 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051. It may also be conceded that the Rockford bank at this time and later was solvent, and for this reason it may be presumed, although the evidence does not so show, that the Rockford bank at this time had a cash reserve.

■ The trust relationship having been established, the depositor may recover such fund or any part thereof in so far as the same can be traced in the possession of the bank either in its original form or in forms to which it has been converted, or into a general fund with which it has been commingled. It is not sufficient for a cestui que trust to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof and that these assets came into the hands of the receiver. Although the draft belonged to the bank, it was a general asset only. No segregation of the draft or its proceeds from the general funds or assets of the bank had taken place. Here, then, the administrator to recover must show that the proceeds from the draft directly or by substitution were commingled at some time with the cash fund of the bank which came into the hands of the receiver. Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891; Backus-Brooks Co. v. Northern Pac. Ry. Co. (C. C. A.) 21 F.(2d) 4. The record is barren of evidence that any proceeds of the draft, directly or by substitution, at any time were commingled with this cash fund.

■ A reason why the draft should not be considered as having been commingled with the cash fund of the bank is that a commingling of the funds can only be considered as such when they lose their identity and are commingled "with a mass of like goods." Peters v. Bain, 133 U. S. 670, 690, 693, 10 S. Ct. 354, 33 L. Ed. 696; Ellerbe v. Studebak-

er Corp. (C. C. A.) 21 F.(2d) 993, 996. The appellee claims certain Iowa authorities support a rule that an augmentation of the general assets of an insolvent estate and a tracing thereto is sufficient, but the questions here involved are governed by the general commercial law of the country and, while the decisions of the state court are always persuasive, instructive, and respected, they are not conclusive. Security Nat. Bank v. Old Nat. Bank, supra.

The clear proof is that the draft was sent to a reserve or a correspondent bank and may there have been converted into cash. But the tracing of the draft or its proceeds to the correspondent bank availeth nothing to claimant, as that fund was depleted and overdrawn prior to the time the bank was taken over by the Comptroller of the Currency. The fund in the correspondent bank must be considered separate and apart from the cash fund in the forwarding bank unless commingling is clearly proven. Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, 52, 15 L. R. A. (N. S.) 1100; First Nat. Bank of Forsyth v. Fidelity & Deposit Co. (C. C. A.) 48 F.(2d) 585, 587.

The administrator, having failed to prove that the draft or any proceeds thereof ever augmented or were commingled with the alleged cash trust fund of $2,907.45, is not entitled to a preferential payment therefrom, and the District Court will so enter its decree.

Reversed.