### TUCKER v. NEWCOMB et al.
#### No. 3460.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Thomas W. Ozlin, of Kenbridge, Va., and A. B. Dickinson, of Richmond, Va., for appellant.

George E. Allen, of Richmond, Va. (W. S. Cudlipp, Jr., of Richmond, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

SOPER, Circuit Judge.

This suit in equity was brought by the infant appellee, by next friend, against the receiver of the First National Bank of Chase City, Va., to recover the sum of $2,359.77. The bank suspended payment on October 10, 1931, on which date the receiver was appointed, and appellee seeks to recover this sum in priority to the general creditors upon the ground that the assets which came into the hands of the receiver were impressed with a trust in her favor.

The findings of fact by the District Judge, to which no error is assigned, show substantially that appellee's father was killed January 11, 1928, during the course of his employment with the Southern Railway Company, and that a suit was brought under the Virginia Wrongful Death Act (Virginia Code of 1930, §§ 5786–5790), in the law and equity court of the city of Richmond, against the railway, by the administratrix of the estate, to wit, Hattie L. Newcomb, who was the widow of the deceased. Pursuant to a compromise agreement, a verdict was rendered in favor of the administratrix, assessing the damages in the sum of $7,700 and directing that of this amount $5,200 be paid by the administratrix to the widow in her individual right, and that $2,500 be paid to the only child, Reva Alise Newcomb, the infant, or to her guardian. Judgment in favor of the administratrix for $7,700 was entered, and the railway paid this amount by a check drawn to the order of Hattie L. Newcomb, administratrix of W. T. Newcomb, deceased. Thereafter, on March 28, 1928, Mrs. Newcomb, being inexperienced in business matters of this nature, took the check to the First National Bank of Chase City, told the officers of the bank of the source from which it came, and that $2,500 of the money belonged to her infant daughter, and sought their advice as to how the child's money should be handled. She was told by the vice president of the bank that it was not necessary for her to qualify as guardian; that the bank would take care of the money, and that it would be all right for her to place it in the savings department, to remain until the child attained the age of twenty-one years, while in the meantime the mother could draw the interest. The child was then five years of age. Relying upon this advice, she indorsed and delivered the check to the bank, which received it as a cash item and credited her individual account with $5,200, and set up a savings account of $2,500 to the credit of "Reva Alise Newcomb, by Hattie L. Newcomb, mother," as shown by the pass book issued therefor. The savings account was allowed to remain as originally set up for the full period of three and a half years until the bank closed, except for the withdrawal of $166.66 for a purpose conceded to be proper, and the interest on the deposit which was regularly paid to the mother to July 1, 1931. Appellee claims only the balance of the principal, $2,333.34, plus accrued interest which was not withdrawn, bringing the total sum demanded to $2,359.77.

Upon receipt of the $7,700 check, the bank promptly forwarded it for collection to its Richmond correspondent, the State-Planters' Bank & Trust Company, which collected and credited it to the account of the forwarding bank. On that day, the credit balance of the Chase City Bank with the State-Planters' Bank was $41,782.96, and on the date of suspension of the Chase City Bank the credit balance was $5,745.08, which amount was paid over to the receiver. But the evidence does not show the state of the account for each day of the three and a half year period which intervened, so that it is not known whether or not at some time in the interval the balance fell below the sum of $2,359.77 now in suit. The only testimony on the point is that of the vice president of the Chase City Bank, who testified that the account with the State-Planters' Bank was an active one, with debits and credits practically every banking day, but that a "satisfactory" balance was kept there at all times. The evidence did show, and the District Judge found as a fact, however, that the Chase City Bank received the $7,700 check as a cash item and forwarded it to its correspondent as such; and that the cash in the vaults of the Chase City Bank amounted to $29,840 on the day the check was taken, and to $9,268.66 on the day of the suspension, and was never reduced during the intervening period below the sum of $6,600.

Upon these facts, two questions of law were presented to the District Court, to wit: (1) Whether a trust relationship between the infant and the bank was created in regard to the funds of the infant in its custody; and, (2) if so, whether the property or funds of the bank, which came into the hands of the receiver, were impressed with the trust in such a way as to entitle the infant to priority of payment over other creditors of the bank. The District Judge decided both questions in favor of the infant, and the receiver appealed.

The money paid by the railroad company in satisfaction of the judgment was properly placed in the hands of the administratrix, and it thereupon became her duty, under the Virginia death statute, to distribute it, free from all debts and liabilities of the deceased, to the widow and the infant child, as directed by the verdict and judgment of the court. The infant's share should have been paid to a legally appointed guardian, as the appellant concedes, and such a guardian would have been required to give bond and to invest the money within sixty days, under the supervision of the proper state court, or in accordance with the general terms of the Virginia statutes. See chapter 216 of the Virginia Code of 1930, entitled "Guardians and Wards," sections 5316 to 5320; sections 5325 and 5326; chapter 221, relating to fiduciaries generally; sections 5430 and 5431. See, also, section 5343, which authorizes a court having control of a fund to which an infant is entitled to cause it to be paid to an infant without the intervention of a guardian, provided the amount is less than $500 and the infant is of sufficient age and discretion to use the fund judiciously. It is not claimed that the administratrix could have lawfully paid the money directly to the infant in this case, or that even a legally appointed guardian would have had lawful authority to make a permanent deposit of the infant's money in a bank during her minority; and the right of a fiduciary to make a temporary deposit of trust funds in a bank believed to be in sound condition, pending investment, may not be extended to justify the keeping of funds, which ought to be invested, longer on deposit than is reasonably necessary. Barney v. Saunders, 16 How. 534, 14 L. Ed. 1047, Corcoran v. Kostrometinoff (C. C. A.) 164 F. 685, 21 L. R. A. (N. S.) 399.

Thus the situation presented to the court is that the bank induced the administratrix and the mother to deposit with it the infant's money, to remain until she should attain twenty-one years of age, knowing that the depositor had no authority to make the deposit, but was violating her duty to the child in doing so. These circumstances gave rise, under the settled rule, to a constructive trust, and the bank thereby was charged from the beginning with the obligations of a trustee to safeguard the fund for the benefit of the infant child. Cuttell v. Fluent (C. C. A.) 51 F.(2d) 974; First National Bank of Forsyth, Mont., v. Fidelity & Deposit Co. of Md. (C. C. A.) 48 F.(2d) 585; Allen v. United States (C. C. A.) 285 F. 678; U. S. Natl. Bank v. City of Centralia (C. C. A.) 240 F. 93; Board of Commissioners of Crawford County, Ohio, v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100.

The remaining question concerns the right of the beneficiary to demand the trust fund from the receiver as a prior claim to the other creditors of the insolvent bank. In this respect the facts of the case are not distinguishable in effect from those in Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 82 A. L. R. 1. We held there that a fund deposited with a bank to purchase bonds for the depositor, which the bank failed to do, was traceable into the hands of the receiver of the bank upon insolvency so as to establish a preferential trust, although the checks forming the deposit had been sent for credit to a correspondent bank, and all of the credit with the correspondent had been entirely exhausted at the time of the bank's failure. The reason was that the checks, when deposited, had been accepted by the bank as a cash item, and there was always enough money in the bank's hands up to the time of the appointment of the receiver to cover the trust fund, and it was assumed that an amount of cash, equivalent to the checks, had been set aside in the vaults of the bank and held by it to satisfy the trust obligation. The practical difficulty under modern banking conditions of distinguishing between cash, cash items, and deposits in other banks, in the application of the equitable doctrine relative to the tracing of trust funds in an insolvent bank, was emphasized.

The parallel situation in the pending case requires a similar ruling here.

Affirmed.