## FERGUSON v. REED.
### No. 2351.

District Court, E. D. Pennsylvania.
March 25, 1942.

S. Elizabeth Holmes, of Philadelphia, Pa., for plaintiff.

Samuel Kratzok, of Philadelphia, Pa., for defendant.

MOORE, District Judge.

In this case, Adda Lutz Ferguson, guardian for Christine G. Clark, a weak-

388

minded person, seeks to establish a trust for the benefit of her ward in certain funds formerly on deposit in the Sixth National Bank of Philadelphia, Pennsylvania (hereinafter called the "Bank") and now in the hands of L. M. Reed, as receiver of the Bank. Defendant has filed its motion to dismiss the complaint. For the purposes of the motion the allegations of the complaint will be taken as true.

Christine G. Clark has been confined in a hospital for insane persons since 1921. She was the owner of ten shares of stock in the Merrick Building and Loan Association No. 3 (hereinafter called the "Association"). The Association kept its funds on deposit in the Bank. William Salter, Vice President and Cashier of the Bank, was also Secretary of the Association, and William F. Cushing, Jr., Assistant Cashier of the Bank, was a director of the Association.

On December 31, 1928, Christine G. Clark's ten shares of stock in the Association were matured for payment and on that day the Association issued an order upon its treasurer signed by William Salter as its secretary authorizing payment to the order of Christine G. Clark of $2,009.40. Thereupon, a check of the Association in that amount was drawn on the Bank by William Salter as secretary payable to the order of Christine G. Clark, which check was also signed by the treasurer of the Association and countersigned by its president. Salter and Cushing knew at the time that Christine G. Clark was insane.

The check for $2,009.40 was never delivered to any representative of Christine G. Clark. So far as the record shows, no person had at that time been appointed as guardian of her estate. Salter merely endorsed the check or had it endorsed "Dep. to credit Merrick B. & L. Ass'n as Trustee for Christine G. Clark", and deposited the check in the savings department of the Bank. The check itself was stamped with the Bank's perforating machine "Paid 1–3–29, 3–23". The Bank was closed on February 28, 1933, and a receiver was appointed on September 29, 1934. The defendant is the successor of the original receiver. The receiver has paid dividends to general creditors of approximately 24% and is on the point of distributing a final dividend, but no payment has been made on plaintiff's claim, presumably because of the controversy over priority.

The plaintiff was appointed as guardian of the estate of Christine G. Clark on October 29, 1941, and the complaint was filed on January 21, 1942.

Four questions are presented: (1) Has the plaintiff been guilty of laches? (2) Were the circumstances such as to create a resulting trust? (3) Are the funds traceable into the hands of the receiver? (4) Was there ever an actual res, essential to the creation of a trust?

■■ The question of laches may be disposed of summarily. In fact, counsel stated in argument that he was not seriously urging this contention. Laches is not chargeable to one under legal disability until such time as the disability is removed. The plaintiff was appointed as guardian of the insane person's estate in October, 1941, and three months later this action was begun. In these circumstances, no possible basis exists on which to ground a charge of laches.

■ Nor is it difficult to justify an affirmative answer to the second and third questions. The circumstances of this case are very similar to those which were presented in the case of Tucker v. Newcomb, 4 Cir., 1933, 67 F.2d 177, 179. In that case, the mother of an infant was advised by the vice president of a bank to deposit a sum of money belonging to the infant in a savings account in the bank without qualifying as guardian. The bank having become insolvent, suit was brought on behalf of the infant against the receiver on the theory that the acceptance of the deposit under the circumstances established a resulting trust in favor of the infant. The Court said:

"Upon these facts, two questions of law were presented to the District Court, to wit: (1) Whether a trust relationship between the infant and the bank was created in regard to the funds of the infant in its custody; and, (2) if so, whether the property or funds of the bank, which came into the hands of the receiver, were impressed with the trust in such a way as to entitle the infant to priority of payment over other creditors of the bank. The District Judge decided both questions in favor of the infant, and the receiver appealed."

"Thus the situation presented to the court is that the bank induced the administratrix and the mother to deposit with it the infant's money, to remain until she should attain twenty-one years of age, knowing that the depositor had no authority to make the deposit, but was violating her duty to the child in doing so. These circumstances gave

rise, under the settled rule, to a constructive trust, and the bank thereby was charged from the beginning with the obligations of a trustee to safeguard the fund for the benefit of the infant child. Cuttell v. Fluent [8 Cir.], 51 F.2d 974; First National Bank of Forsyth, Montana, v. Fidelity & Deposit Co. of Maryland [9 Cir.], 48 F.2d 585; Allen v. United States [1 Cir.], 285 F. 678; United States Nat. Bank v. City of Centralia [9 Cir.], 240 F. 93; Board of Commissioners of Crawford County, Ohio, v. Strawn [6 Cir.], 157 F. 49, 15 L.R.A.,N.S., 1100."

Salter knew at the time the deposit was made that the payee of the check was an insane person. When he deposited the check in the bank, and accepted the deposit for the bank, he did so knowing that the insane person, the owner of the cash, was entitled under the law to have it safeguarded, kept and applied under court protection. I am of opinion that, if the element of augmentation of the Bank's assets had been present, these circumstances would have given rise to a resulting trust and that the bank would thereafter have been charged with the obligation of a trustee to safeguard the fund for the benefit of the insane person.

■ Under the modern rule, to trace the trust funds into the hands of the receiver it would only be necessary to show that the lowest level of cash in the vaults of the bank never fell below the amount claimed by the plaintiff. The complaint alleges that the funds of the Bank have at no time amounted to less than the sum represented by the check to Christine G. Clark. It would therefore be assumed as a matter of law that an amount of cash sufficient to cover the trust fund was set aside in the vaults of the bank and held for that purpose. Tucker v. Newcomb, supra. This doctrine of the "lowest balance" is recognized in most of the decisions of the United States Courts and its application to the instant case would serve to identify and earmark the fund in the hands of the Receiver.

■ The question remains whether an actual res ever existed, in the sense that the assets of the Bank were augmented by the deposit of the check in the Bank to the credit of the Association, as trustee for Christine G. Clark. If the law of Pennsylvania were to govern this case, as contended by the plaintiff, that question would also be affirmatively answered; for it is the settled law in Pennsylvania that the deposit of a check in a bank, even though the check be drawn on the bank receiving the deposit, is equivalent to the bank's cashing the check and receiving the cash back for deposit. Bryan v. First National Bank of McKees Rocks, 205 Pa. 7, 54 A. 480.

■ I cannot agree with this contention of the plaintiff. I am of opinion that the case of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, is not authority for applying the law of Pennsylvania to this case. This proceeding is brought under the Federal statute governing the distribution of funds in the hands of the receiver of a closed national bank. 12 U.S.C.A. § 194. The Supreme Court has not extended the doctrine of Erie v. Tompkins beyond diversity cases. D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 62 S.Ct. 676, 86 L.Ed. ——, decided March 2, 1942 (concurring opinion of Mr. Justice Jackson). Therefore, we must look to the Federal decisions to determine what the law is on the question of augmentation of funds. From an examination of the Federal cases, I conclude that the settled rule in the Federal Courts is that even where the circumstances are such as to create a trust, and where the trust fund would otherwise be traceable into the hands of the receiver, it still must be shown, in order to decree priority of distribution, that the funds in the hands of the receiver have been directly augmented by the presence of the trust property or its proceeds. The deposit here, which the plaintiffs seeks to recover as a trust fund in the hands of the receiver, was created by the Association's deposit in the Bank to the credit of itself as trustee for Christine G. Clark of its own check on its own deposit account in the Bank. This transaction under the Federal rule resulted in a mere shifting of credits which added nothing whatever to the assets of the Bank. There was therefore no augmentation of assets upon which a trust could be predicated. This distinction between the rule in cases where assets of the bank have been augmented and the rule in cases where they have not been augmented is clearly pointed out and discussed, with ample citation of authority, in the case of Swan v. Children's Home Society of West Virginia, 4 Cir., 1933, 67 F.2d 84, decided by the same Court which rendered the decision in the case of Tucker v. Newcomb, supra.

While the complaint alleges that no dividend has been received by plaintiff,

whereas the receiver has distributed a dividend of 24% to the general creditors, it is clear that the sole reason for this failure is the plaintiff's claim of a preferred status. The dismissal of the present complaint will be without prejudice to plaintiff's right to participation in the distribution to general creditors.

Because of the lack of a showing, in the facts set forth in the complaint, that there was an augmentation of the bank's assets by the transaction complained of, the motion to dismiss the complaint must be sustained. An order may be entered in accordance with this opinion.