COUNTY OF MISSOULA ET AL., APPELLANTS, *v.* LOCHRIE, SUPERINTENDENT OF BANKS, RESPONDENT.

(No. 6,321.)

(Submitted October 8, 1928. Decided November 15, 1928.)

[271 Pac. 710.]

*Mr. Dwight N. Mason* and *Mr. Walter L. Pope,* for Appellants, submitted a brief; *Mr. Pope* argued the cause orally.

*Mr. Thomas N. Marlowe* and *Mr. John E. Patterson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by Missoula county and its treasurer to recover the sum of $42,132.55 in the hands of the receiver of the American Bank and Trust Company of Missoula, alleged by the plaintiffs to constitute trust funds by reason of the fact that money belonging to the county was deposited and kept on deposit with the American Bank and Trust Company while it was a going concern, without any valid bond or other proper security. J. G. Larson, superintendent of banks of the state of Montana, was regularly substituted as defendant in the action in place of George K. Dick, receiver. Upon issue joined the cause was tried before the court without a jury. After the conclusion of the trial and submission of the case, the court made written findings of fact and conclusions of law in the defendant's favor, upon which judgment was duly entered, and the plaintiffs have appealed.

The plaintiffs have assigned seventy-six alleged errors as grounds for the reversal of the judgment. We have carefully considered them all in connection with the record, and are of opinion that there is but one question presented necessary for serious consideration in disposition of the appeal, viz.: Is the county entitled to preference as a creditor of the American Bank and Trust Company, now insolvent, in the course of its liquidation?

Without dispute it appears that the American Bank and Trust Company of Missoula had been duly and regularly designated as a depositary of county funds by the board of county commissioners, and security for such deposits had been submitted to and approved by such board. The county treasurer, in reliance thereon, and in the regular discharge of the duties of his office, made deposits of county moneys with such bank from day to day until, because of insolvency, it closed its doors for business on January 25, 1924. At that time the county's deposits with the bank amounted to the

sum sought to be recovered by the plaintiffs in this action. On November 20, 1922, the board approved a bond covering the deposit of county moneys executed by the bank with the Maryland Casualty Company as surety, in the sum of $20,000, thus enabling the treasurer to make deposit of county funds in the bank to the extent of the principal amount of the bond. That bond expired by limitation on November 25, 1923, and was not renewed. On April 5, 1923, the board of county commissioners approved a bond executed for the bank by its officers, pursuant to specific authorization, with individual sureties, for the sum of $100,000, whereby the treasurer was provided with additional security for funds deposited, to the amount of $50,000. On July 21, 1923, the board of county commissioners caused the last-mentioned bond to be withdrawn, canceled and returned to the bank. Thereafter, on November 15, 1923, the date of the expiration of the Maryland Casualty bond, there were county funds on deposit with the bank to the amount of $19,984.63, and the county treasurer having threatened to withdraw such deposit, the bank delivered and entrusted to him county warrants to the aggregate amount of $21,181.68, as security for the county deposits made with it. There was no action taken by the board of county commissioners with respect to the warrant security so accepted by the treasurer. Subsequently, on November 28, 1923, the board of county commissioners again had before it and considered the sufficiency of the individual bond by it theretofore canceled, and formally approved it and advised the treasurer of the action so taken by it, resulting in the treasurer making return of the warrants by him taken and so held as security. The county funds deposited with the bank were not kept separate from other funds in the bank, but were intermingled with other moneys, augmented the bank's assets, and were treated as general deposits. After the failure of the bank the county treasurer instituted an action on the individual bond to recover the amount of county moneys on deposit on the date the bank

closed its doors, being the same sum attempted to be re-covered in this action. The trial court denied his right to recover, and such determination was by this court affirmed on February 8, 1926. (*State ex rel. Urton* v. *American Bank & Trust Co.*, 75 Mont. 369, 243 Pac. 1093.)

In the present action the district court held that the individual bond attempted to be reinstated by the board on November 28, 1923, having been approved by the board, and deemed sufficient, protected the treasurer in the deposits made with and carried by the bank and constituted them general deposits, so that the plaintiffs were without standing in their contention of right to a preferential claim for the balance of money remaining in the bank when it closed its doors.

The sole question is whether the bank may be considered as a trustee *ex maleficio*, in accordance with the holding of this court in the case of *Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596. The plain-tiffs' case appears to be predicated entirely upon that deci-sion.

So far as pertinent here the statute governing the deposit of county funds provides:

"*Deposit of public funds.* It shall be the duty of all county, city and town treasurers, to deposit all public moneys in his possession, and under his control in any solvent bank or banks located in the county, city or town of which such treasurer is an officer, subject to national supervision or state examination as the board of county commissioners, in the case of a county * * * may designate, and no other. * * * The treasurer shall take from such banks such security as the board of county commissioners, in the case of a county, * * * may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand. * * * Where moneys shall have been deposited in accordance with the provisions of this Act, the treasurer shall not be liable for loss on account of any such deposit that may occur through damage by the

elements, or for any other cause or reason occasioned through means other than his own neglect, fraud, or dishonorable conduct." (Sec. 4767, Rev. Codes 1921, as amended by Chap. 89, Laws of 1923.)

By reason of this statute the treasurer and his bondsmen are relieved of all responsibility in the selection of the depositaries of county funds by him received and collected, and he has nothing to say with respect to the sufficiency of the security prescribed and deemed adequate by the board of county commissioners as a county depositary board. The apparent basic reason for the enactment of this statute was to relieve the treasurer and his bondsmen from liability for the safe keeping of county funds, since he was thereby deprived of right to select depositaries or to prescribe the character of security to be furnished by banks in which such deposits were made. It was enacted in consequence of the requirement of the payment of interest on public funds by selected depositaries, and followed closely the amendment made to the Constitution, adopted and approved in 1908, designed to prohibit the making of private profit from the deposit of public funds "by the state treasurer or by any other public officer," whereby a state depositary board was created "with full power and authority to designate depositaries with which all funds in the hands of the state treasurer shall be deposited, and at such rate of interest as may be prescribed by law. When money shall have been deposited under direction of said depositary board and in accordance with the law, the treasurer shall not be liable for loss on account of any such deposit occurring through damage by the elements or for any other cause or reason occasioned through means other than his own neglect, fraud or dishonorable conduct." (Sec. 14, Art. XII, Const.)

All that the treasurer could do was to ministerially make deposit of the county funds in his keeping in the banks designated by the board of county commissioners, and upon such security as it should prescribe, deem sufficient, and

approve. He was thus deprived of all discretion in the matter. So that when, on November 28, 1923, the individual bond for $100,000 was delivered to him, approved by the board of county commissioners as satisfactory and sufficient security for deposits with the American Bank and Trust Company to the extent of $50,000, he was fully protected in carrying deposits with that bank to the amount of $50,000, whether in fact the bond was or was not valid or sufficient. The treasurer was not required to make independent inquiry or determination as to the legal right of the board to reinstate a bond theretofore canceled by it, nor the facts and conditions leading to such action. Under the statute, where the security given meets the approval of the board, and is of character such as the law prescribes, the treasurer is without right to question its sufficiency. After the board has given its approval to authorized security, whether it proves to be good or bad, the treasurer is protected in deposits made by him in reliance thereon, and such deposits are classed as general, since the security exacted and approved by the board is deemed sufficient.

This statute has heretofore been given like interpretation and application by this court, and we see no reason to deviate from the views expressed by Mr. Justice Matthews, speaking for the court, in the case of *City of Missoula* v. *Dick*, 76 Mont. 502, 248 Pac. 193, wherein it is held that "when the treasurer of either a county or city complies with the statutory requirements in this regard, the corporate entity owning the funds is deemed to have consented to the deposit; the deposit is legally made, and becomes but a general deposit." The *Yellowstone County Case*, decided under a prior statute, wherein the law itself prescribed the condition necessary to make the deposit lawful, is not at variance with our conclusion reached in the *City of Missoula Case*, or in the case now under consideration. In the *Yellowstone County Case* this interpretation is given express recognition, for it is there held that, to the extent of the amount of funds de-

posited by the treasurer, secured as prescribed by the then existing statute, they constituted general deposits. In that case it was held that "to that extent the county itself consented to become a general creditor of the bank, and, in case of the bank's failure, to share alike with other general creditors in the distribution of its assets, or to look to the bonding company for relief." And in our opinion, "the *Yellowstone County Case* stated the law correctly when it determined that the portion of the county funds lawfully placed in the bank constituted a general deposit." (*Bignell* v. *Cummins*, 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797.)

As was again correctly held by this court in the most recent of our decisions construing the statute, *State ex rel. Rankin* v. *Madison State Bank*, 77 Mont. 498, 251 Pac. 548, again speaking through our distinguished associate, Mr. Justice Matthews: "The intent and purpose of the legislature, in passing the Act, was clearly to insure the safety of public moneys, by requiring the treasurer to deposit such moneys only in solvent banks, designated by the board of county commissioners as meeting the requirements of the statute and satisfying the board, by the furnishing of such security as the board might prescribe and deem fully sufficient, and only after such security had been approved by the board, and in effect requiring the withdrawal of the funds if thereafter the security furnished became, in the judgment of the board, valueless or insufficient.

"The statute does not require a periodical designation, and, if the designation shown to have been made * * * meets with the requirements of the statute, the treasurer was justified in continuing to make deposits in the bank until such a time as he might be notified by the board that the designation had been withdrawn, so long as the required bonds were furnished and approved by the board and delivered to him prior to the making of the deposits."

The laxity or carelessness of the board of county commissioners in the proper performance of its duty does not change

the situation. Its action in designating the depositary and approving the sufficiency of the security, whether proper or not, placed the county on a parity with other general depositors of the bank, and it would now be manifestly unjust and unfair, under the conditions appearing without controversy, to declare the county to be entitled to a preference over other general creditors of the bank.

Accordingly the judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.