CITY OF BILLINGS, Respondent, v. MASSACHUSETTS BONDING & INSURANCE CO. et al., Appellants.

(No. 6,599.)

(Submitted June 11, 1930. Decided July 18, 1930.)

[290 Pac. 246.]

*Messrs. Wood & Cooke,* for Appellants, submitted an original and a reply brief; *Mr. Sterling M. Wood* argued the cause orally.

*Mr. M. J. Lamb,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

This action was brought by plaintiff against Clara N. Hunt, its former treasurer, and Massachusetts Bonding & Insurance Company, her official bondsman, to recover the amount of money on deposit in Yegen Bros., Bankers, hereafter called the bank, and lost through the failure of the bank.

The bank closed February 15, 1924, at which time defendant Hunt, as city treasurer, had on deposit city funds in the sum of $51,011.44; there were depository bonds aggregating the sum of $27,500, which had been duly approved by the city council, and a minute entry of such approval entered upon the records of the proceedings of the council. At the time of the closing of the bank there were no other depository bonds. The sum of $27,500 has been paid by the sureties on the depository bonds and the balance of $23,511.44, the amount sued for, has not been paid to plaintiff.

One of the depository bonds, written by the American Surety Company, in force and effect from October 1, 1923, to October 1, 1924, contains this language: "The condition of the obligation is as follows: That whereas the said James M. Noyes,

as city treasurer, has deposited or is about to deposit, and intends hereafter to deposit from time to time in and with said principal [Yegen Bros., Bankers] to his credit as city treasurer of the city of Billings, State of Montana (and his successor may deposit) certain moneys belonging to the city of Billings, State of Montana, or by him held and possessed as custodian by virtue of his trust and office. * * * Now, therefore, the condition of this obligation is such that if the said Yegen Bros., Bankers, of Billings, Montana, the said surety, or either of them, shall well and truly indemnify and save harmless the said James M. Noyes as city treasurer, his successor in office, and the city of Billings, from all damage and loss of every kind by reason of deposits of such money as heretofore or hereafter made in or with said bank," etc.

The depository bond, in the penal sum of $7,500, written by the Continental Casualty Company, dated December 22, 1923, and approved by the city council on January 3, 1924, contains similar provisions and conditions.

The cause was tried before the court sitting without a jury. Findings of fact and conclusions of law were made in favor of plaintiff, upon which judgment was entered for the amount sued for, with interest and costs. Defendants appeal from the judgment.

The court found, among other things: "That the city council of the plaintiff had designated the bank of Yegen Bros., Bankers, as one of the depositories of the plaintiff's money. That the city treasurer, Clara N. Hunt, had procured a number of bonds to secure the city for deposits made or to be made in said bank, but the only two bonds which were valid and which had not expired are the two mentioned in Finding No. 1. That all other bonds had expired, and there were no renewals or approval of other renewals by the city council. That the city council of the city of Billings did not designate the amount of the bond which the defendant Clara N. Hunt as city treasurer, should require of the bank of Yegen Bros., Bankers, neither had it taken any action direct-

ing the said defendant, Clara N. Hunt, to deposit in said bank any sum in excess of $27,500.00.'' The court concluded, as a matter of law, that the city treasurer was guilty of neglect in permitting any money in excess of $27,500 to remain in the bank without presenting to the council bonds satisfactory to the council to secure any excess above the amount named, and that plaintiff was entitled to judgment for any such excess.

The above findings are sustained by the evidence, but it should be noted that the evidence regarding depository bonds which had expired is indefinite and unsatisfactory, and does not establish liability upon the part of defendants, since the date of expiration of those bonds does not appear, nor their amount, that they had ever been accepted and approved by the city council, or that any official action had been taken by the council after their expiration, while it conclusively appears that the council failed, by resolution or otherwise, to designate or fix the amount of depository bonds the bank should be required to furnish.

Section 4767, Revised Codes 1921, as amended by Chapter 89, Laws of 1923, so far as pertinent, provides: ''It shall be the duty of all * * * city * * * treasurers to deposit all public moneys in his possession and under his control in any solvent bank or banks located in the * * * city * * * of which such treasurer is an officer, subject to national supervision or state examination as the * * * council * * * may designate, and no other. * * * The treasurer shall take from such banks such security as the * * * council * * * may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand together with the interest thereon. * * * Where moneys shall have been deposited in accordance with the provisions of this Act, the treasurer shall not be liable for loss on account of any such deposit that may occur through damage by the elements,

or for any other cause or reason occasioned through means other than his own neglect, fraud, or dishonorable conduct.''

The legislature has vested in the city council discretion to determine and prescribe such security as it "shall deem sufficient" without regard to the amount of deposits made. This statute was before this court in the case of *City of Missoula* v. *Dick,* 76 Mont. 502, 248 Pac. 193, 195, and Mr. Justice Matthews, speaking for the court said: ''The amount of security to be given for the deposit of city funds is thus left to the deliberate judgment of the city council, and, in the absence of fraud, bad faith, or flagrant abuse of discretion, courts cannot interfere, even though the result reached may be unjust and erroneous. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.) Here there is no suggestion of fraud, bad faith, or abuse of discretion; the council prescribed and approved the bond which should be given to cover all deposits made between May 10, 1922, and May 10, 1924. As the matter was left to it, it could prescribe security either less than, or in excess of, the amount of such deposits. If we could read into the statute a requirement that the council prescribe security in excess of the deposits, we could as well restore the requirement of double the amount which was wiped out by the legislature; but our province is to apply the law as we find it and not to make laws. When, in 1913, the legislature amended the then existing provision, it declared that thereafter the new rule should be applied, and, had it intended that public funds should at all times be protected by security in excess of the deposits, it would have said so in no uncertain terms. As the matter of the amount of security was left to the discretion of the council, it was its duty, if it deemed the bond on file insufficient to protect the full amount of the deposits, to prescribe what further bond should be furnished and to so notify the treasurer, or it might with propriety have directed the treasurer, at the time it prescribed the bond for the period mentioned, not to deposit to exceed a certain amount until further security was prescribed and approved; it did neither, and therefore, as

the bond prescribed was in effect and covered all deposits made, the law was complied with and the deposits made became merely general deposits.'' To the same effect are *State ex rel. School District* v. *McGraw,* 74 Mont. 152, 240 Pac. 812; *County of Missoula* v. *Lochrie,* 83 Mont. 308, 271 Pac. 710.

It follows that the court erred in its conclusions of law, and the judgment based thereon cannot stand. The conclusion we have reached does not conflict with the decision in *State* v. *Rosman,* 84 Mont. 207, 274 Pac. 850, 852. In that case the depository bond given to secure county funds and regularly approved by the board of county commissioners had expired, and the county treasurer permitted county funds to remain on deposit in the bank without any bond whatever, and we held that the treasurer and her official bondsmen were liable for the moneys lost through the bank's failure, while in the case before us there are bonds duly approved by the city council, under which the sureties obligated themselves to indemnify plaintiff from *all loss and damage of every kind,* ''by reason of deposits of such moneys as heretofore or hereafter made, in or with said bank,'' and no other bond was ever required by the city council or furnished by the bank. Here, as in the *Dick Case,* supra, the city treasurer had depository bonds which on their face were sufficient in amount, in the judgment of the city council, to secure all moneys on deposit in the bank.

We conclude, upon the facts disclosed by the record, that the council deemed the bonds furnished and approved ''fully sufficient and necessary to insure the safety and prompt payment of all such deposits.''

The judgment is reversed and the cause remanded to the district court of Yellowstone county, with direction to enter judgment for defendants.

ASSOCIATE JUSTICES MATTHEWS and GALEN concur.

MR. CHIEF JUSTICE CALLAWAY: I concur. The purpose of the statute governing this case, the reasons for its

enactment, and its application to particular cases, have been discussed in *State* v. *Rosman*, supra, *County of Missoula* v. *Lochrie*, supra, and *State ex rel. Rankin* v. *Madison State Bank*, 77 Mont. 498, 251 Pac. 548, and need not be repeated.

The duty to see that public funds deposited in a bank are fully protected is, in the first instance, with the depository board, which in this case was the city council. As we said in *State* v. *Rosman*, by the clear import of the statute, no deposit of funds shall be made, nor be permitted to remain in a bank, unless the same is protected by a bond or security approved by the depository board. Unfortunately, it seems to me, the statute does not prescribe in definite terms, as I think it should, that the bond shall in all cases equal or exceed the amount deposited, and, in view of the language employed in the statute, that requirement cannot be implied, as is demonstrated in *City of Missoula* v. *Dick*, supra. On the contrary, the depository board is given power to prescribe the amount of security to be required. The statute requires the depository board to designate a solvent bank and to require from the bank such security as the board prescribes. Thereupon, it would seem, the treasurer, unless limited by the order of the board, may legally deposit public money therein without restraint so long as the security furnished by the bank is unimpaired. In the *Madison State Bank Case*, this court, speaking through Mr. Justice Matthews, said: ''The intent and purpose of the legislature, in passing the Act, was clearly to insure the safety of public moneys, by requiring the treasurer to deposit such moneys only in solvent banks, designated by the board of county commissioners as meeting the requirements of the statute and satisfying the board, by the furnishing of such security as the board might prescribe and deem fully sufficient, and only after such security has been approved by the board, and in effect requiring the withdrawal of the funds if thereafter the security furnished became, in the judgment of the board, valueless or insufficient.''

If the security fails, as where the bond expires, the treasurer is no longer protected, and is liable if he permits the public

funds to remain in the bank. And where the bond is about to expire it is the duty of the treasurer to withdraw the moneys before the contingency occurs. (*State* v. *Rosman,* supra.)

In the case at bar two minute entries only are shown relating to the requirement of security for the deposit of public moneys in banks. On November 30, 1923, a motion was carried "that banks be required to put up surety or personal bonds to secure deposits of city funds." On December 4, 1923, this appears: "The matter of allowing the banks to put municipal and government bonds in place of surety bonds to protect city deposits was again brought up. Moved by Ald. Covert, seconded by Ald. Berryman, that the treasurer be directed to place city funds in such banks as have bonds up, as provided by law. Motion carried." When this last motion was carried, it appears that surety bonds aggregating $20,000 had been given by Yegen Bros., Bankers, and approved by the council, and these continued in effect until after the bank closed. On January 4, 1924, the bond of the Continental Casualty Company for $7,500 was given and approved. No further action by the council appears. It was the duty of the council to require further security if it deemed that action necessary. No restriction as to the amount to be deposited with the Yegens was made. Whether the other banks had given more ample security for deposits does not appear. The treasurer was required to deposit the public funds in her charge only in designated banks. If the security furnished by other banks was no greater in proportion to the amount deposited than was that furnished by the Yegens, it would seem the treasurer might deposit with any of the banks, in effect declared solvent by the council, without being charged with neglect of duty in making the deposits in a greater amount than the security. The fact remains that the Yegen bank was a designated depository, that bonds to the extent of $27,500 were approved, and that no limit was placed upon the treasurer as to the amount she should deposit

with that bank. It is true that she thought she had sufficient bonds to cover the entire deposit; but did not the council bear the greater duty of knowing what bonds it had required and approved? It was the duty of the council to require security which it deemed "fully sufficient and necessary to insure the safety and prompt payment of all deposits." It appears it did not require security enough. Upon the whole case it does not seem to me the treasurer can be held guilty of neglect in depositing sums in excess of the securities accepted and approved by the council.

MR. JUSTICE ANGSTMAN, Dissenting: The bond here sued upon was conditioned that defendant city treasurer "shall account for and pay over and deliver to the person or officer entitled to receive the same, all moneys or other property that may come into her hands as such city treasurer." This she has not done. Prima facie, the treasurer and the sureties are liable on the bond. But, since the loss was occasioned by depositing the moneys in a bank which subsequently became insolvent, under the express provisions of Chapter 89, Laws of 1923, she is relieved from liability, "where [the] moneys shall have been deposited in accordance with the provisions of this Act."

What, then, are the provisions of that Act? The first part of the Act provides that the city treasurer shall deposit all public moneys in his possession and under his control in any solvent bank in the city as the city council may designate. The bank in question here had been designated as a depository. The Act then provides: "The treasurer shall take from such banks such security as * * * the council * * * may prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand together with the interest thereon." The Act provides for different classes of securities which may be accepted. It then provides that "it shall be the duty of * * * the council * * * upon the acceptance and approval of any of the above mentioned bonds or securities,

to make a complete minute entry of such acceptance and approval upon the record of their proceedings.'' (Sec. 1.)

The statute, it should be noted, does not require a minute entry to be made by the council as to what securities the council may prescribe and ''deem fully sufficient and necessary to insure the safety and prompt payment'' of the deposits. That is a matter which the legislature has seen fit to let rest upon the understanding between the council and the city treasurer without a formal minute entry. The mere fact that the council approves a depository bond reciting that the sureties obligate themselves for ''all damages and loss of every kind by reason of deposits made'' is no indication that the council thereby authorized the deposit of all public moneys without limitation as to amount. Of course, so far as the liability of the sureties on the depository bonds is concerned, they would be held to the obligation assumed by them regardless of the amount of the deposits. That clause in the depository bonds simply measures the extent of the liability of the sureties, and has nothing to do with the conduct of the city treasurer as to the amount of deposits that may be made under a given bond.

To ascertain what amount of money the treasurer was authorized to deposit under a given bond, reference must be had to the understanding between her and the city council. Here it is shown that one of the bonds contains this clause: ''Whereas, it is mutually understood and agreed that said surety shall not be liable thereon for moneys on deposit in said bank, in excess of said sum of Seventy-five Hundred ($7,500.00) Dollars, but shall at all times during the continuance of these presents be liable for any and all such deposits up to the said sum of Seventy-five Hundred ($7,500.00) Dollars, payable on demand.'' Certain it must be that, if this were the only bond approved by the council, the treasurer would not have been authorized to deposit more than $7,500 without a clear understanding to the contrary. While the record in this case is not clear on some points, the

reasonable inference to be drawn from the evidence in its entirety is that the city treasurer understood that she should not deposit money in the bank in excess of the penal sum named in the bonds held as security. The record shows that at the time the bank closed she was asked if she had sufficient surety bonds to cover the money on deposit. She did not reply by saying that she was relying upon the fact that the council had approved bonds to the extent of $27,500 as giving her the right to make deposits in any amount without limitation. She replied by saying that she had approximately $50,000 of the city's money in the bank, and had about $51,000 in bonds.

There is evidence that the city council had taken action at nearly every meeting for a year or so before the bank failed with reference to the matter of securing deposits of city funds. At one meeting a motion was made and adopted to require the city treasurer to secure surety bonds for all deposits of the city in any bank. No record was made of this. Following action taken by the council, the matter was taken up with the treasurer by the mayor, and she was informed of the action taken by the council. Notwithstanding the efforts of the council to have all of the deposits protected by surety bonds, there is evidence that the treasurer submitted to the council a personal bond some time in the fall of 1923 for their approval, but it was rejected. While the record shows that the council did not fix the amount of the bonds, in dollars, which the treasurer should procure, there is evidence that the sense of the council at several of its meetings was that she should get her deposits "fully secured."

In my opinion, the evidence was sufficient to prove prima facie that the treasurer had been required by the city council to limit the deposits to the penal sum stipulated in effective depository bonds. She did not testify in her own behalf. If it were a fact that she understood, from the mere fact that the bank had been designated as a depository and from the fact that there had been acceptance and approval of the depository bonds in the sum of $27,500, that she was authorized

to make deposits without limit as to the amount, she could easily have said so.

The decision in the case of *City of Missoula* v. *Dick*, 76 Mont. 502, 248 Pac. 193, is not in conflict with the views I have stated. In that case the stipulated facts were that the bond in question "was by the city council deemed fully sufficient and necessary to insure the safety and prompt payment of all moneys deposited, on demand, together with interest thereon." By reason of this stipulation the court in that case properly said: "The council prescribed and approved the bond which should be given to cover all deposits made between May 10, 1922, and May 10, 1924." No such facts appear in this case.

While it is unnecessary to determine the question here, it is also doubtful whether the burden of proof of facts tending to relieve the treasurer of liability does not rest upon her. In other words, in order to secure the exemption from liability under Chapter 89, it would seem that the treasurer must assume the burden of proving that the deposits were made in conformity with the Act, by proof, first, that the council had prescribed the security deemed sufficient, and, secondly, that it approved the security actually furnished.

The question whether the judgment in the action by plaintiff against the bank to establish a preferred claim is a bar to the maintenance of this action, not having been passed upon by the majority opinion, requires no consideration here.

Rehearing denied July 29, 1930.