**FIRST NAT. BANK OF FORSYTH, MONT., et al. v. FIDELITY & DEPOSIT CO. OF MARYLAND. ***

No. 6316.

Circuit Court of Appeals, Ninth Circuit.

March 23, 1931.

*Rehearing denied May 11, 1931.

Sterling M. Wood and Robert E. Cooke, both of Billings, Mont., for appellants.

Thomas A. Mapes, of Denver, Colo., and Thomas E. Davis, of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

G. G. Davis was county treasurer of Rosebud county, Montana, from the first Monday of March, 1923, until the first Monday of March, 1925. March 7, 1923, the board of county commissioners of the county made an order designating certain banks as depositories of county moneys and approving the bonds of the banks so designated. We are here only concerned with the First National Bank of Forsyth, Montana. That bank was designated as one of the depositories and its bond in the sum of $100,000 was approved. The order approving the bond authorized Da-

vis, as county treasurer, to deposit county moneys in the Forsyth Bank to an amount not exceeding the amount or penalty of the bond as approved. The bond was executed pursuant to the requirements of section 4767 of the Revised Codes of Montana 1921, as amended by chapter 89, Laws of Montana, 1923, which provides that it shall be the duty of the county treasurer to deposit all public moneys in his possession and under his control in a bank or banks to be designated by the board of county commissioners, and no other. The section further provides that the treasurer shall take from the bank such security as the board of county commissioners may prescribe, approve, and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand, together with the interest thereon. October 3, 1923, a second order was made approving certain other depository bonds, including a bond of the Forsyth Bank in the sum of $100,000. This bond apparently superseded the former. At least, there is no claim that the security at any time exceeded the amount or penalty of either bond. The latter order was silent as to any limit on the amount of deposits that might be made in any of the several depositories named. December 13, 1923, the Forsyth Bank became insolvent and closed its door. On that date the balance due on the account of the county treasurer, as disclosed by the bank ledger, was $100,369.98. There was an additional amount of $18,290.66, represented by two checks issued to the county by the cashier of the bank on December 3 and December 7, 1923, for county funds deposited with the bank on these dates. Subsequent to the closing of its doors, the bank became further liable to the county upon a draft, for protest fees, a returned check, and for interest on deposits, in amounts aggregating approximately $4,700. After the failure of the bank, the county brought an action against the Fidelity & Deposit Company of Maryland, as surety on the official bond of the county treasurer, to recover certain sums of money, including the sum or sums in excess of the amount authorized to be deposited by the county treasurer in the Forsyth Bank, and for other purposes. This suit was later compromised by the payment of the sum of $20,-734.75, and upon such payment the county assigned to the surety all its right, title, and interest in and to its claim against the Forsyth Bank. December 18, 1923, a receiver was appointed for the bank, and when the receiver took charge there came into his possession and custody $5,393.82 in cash, representing the actual cash on hand in the bank at that time. There was also on deposit in three corresponding banks further sums aggregating $6,030.05. The present suit was instituted by the surety against the receiver to recover as a preferred claim the amount paid on the settlement above referred to, less the amount of certain dividends received. The court below entered a decree in favor of the plaintiff for the sum of $11,381.66, made up of the following items: First, $5,351.61, the smallest amount of cash and cash items in the bank between the time of the unlawful deposits and the close of the bank; and, second, $6,030.05, the amount on deposit in the three corresponding banks, to which was added interest at the rate of 8 per cent. per annum from March 1, 1923. From this decree the defendant has appealed.

The foregoing summary covers the facts stipulated by the parties, so far as deemed material. On these facts the appellant contends that there was no trust ex maleficio as against the bank; that the deposit of county funds did not augment the assets of the bank; that the deposits have not been traced to the funds that came into the hands of the receiver; and that the allowance of interest was contrary to law.

In American Surety Co. v. Jackson, 24 F. (2d) 768, 769, this court said:

"If the city funds were lawfully deposited in the depository bank, the relation of debtor and creditor existed between the city and the bank, and it is well settled that neither the city nor those claiming under it can under such circumstances claim any preference over general creditors. On the other hand, if the deposits were made by the city treasurer in violation of the laws of the state, it is equally well settled that the bank became a trustee, and that the city, or those claiming under it, may recover from the receiver the amount of the trust fund, if less than the amount of cash coming into his hands at the inception of the receivership, unless it is made to appear that some portion of the trust fund had theretofore been paid out or dissipated by the bank. Spokane County v. First Nat. Bank (C. C. A.) 68 F. 979; Merchants' Nat. Bank v. School District No. 8 (C. C. A.) 94 F. 705; Smith v. Mottley (C. C. A.) 150 F. 266; Board of Com'rs v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; In re J. M. Acheson Co. (C. C. A.) 170 F. 427; Titlow v. McCormick (C. C. A.) 236 F. 209. We do not understand that this rule is controverted."

■ The appellant contends that there was no trust ex maleficio because the deposits made by the county treasurer in excess of the amount or penalty of the bond approved by the board of county commissioners were not in violation of law, citing City of Missoula v. Dick, 76 Mont. 502, 248 P. 193, 195, and Missoula County v. Lochrie, 83 Mont. 308, 271 P. 710. In the City of Missoula Case it was held that deposits by a city treasurer in excess of the amount or penalty of the bond approved by the city council were not in violation of law, and constituted a general deposit from which no trust could arise or be implied. But the court significantly added:

"As the matter of the amount of security was left to the discretion of the council, it was its duty, if it deemed the bond on file insufficient to protect the full amount of the deposits, to prescribe what further bond should be furnished and to so notify the treasurer, or it might with propriety have directed the treasurer, at the time it prescribed the bond for the period mentioned, not to deposit to exceed a certain amount until further security was prescribed and approved; it did neither, and therefore, as the bond prescribed was in effect and covered all deposits made the law was complied with and the deposits made became merely general deposits."

Here, there was an express direction from the board of county commissioners to the county treasurer not to make deposits during his term of office in excess of the amount or penalty of the bonds approved by the board, and this explicit direction was wholly disregarded. The act of the county treasurer in making the excess deposits, and the act of the bank in receiving them were therefore clearly wrongful and in violation of law.

■ The contention that the deposits wrongfully made did not augment or increase the assets of the bank is apparently based on the fact that the stipulation used the term county funds instead of public moneys, as employed in the statute relating to deposits of public moneys. This contention is fully answered by the decision of this court in American Surety Co. v. Jackson, supra, where we said:

"But, in the absence of proof to the contrary, we must presume that the city treasurer obeyed the law and that he accepted and deposited nothing but cash, or the equivalent of cash."

■ The further contention, that the deposits have not been sufficiently traced, is fully answered by repeated decisions of this court which were followed by the court below, in so far as concerns the cash which actually came into the hands of the receiver upon his appointment. Thus, in Merchants' Nat. Bank v. School Dist. No. 8, 94 F. 705, 708, this court said:

"In the former case it was held that the depositor of a fund intrusted to a bank, by which it has been misapplied, is not entitled to a general lien upon the assets of the bank for the repayment thereof, but that he can follow the same, so far as it can be traced in the possession of the bank, either in its original form or in forms to which it has been converted, or into a general fund, with which it has been commingled, and that his right to recover it in the latter instance will depend upon whether or not a sum of money still remains in the possession of the bank equal to the amount so due him; it being the presumption of the law that, if moneys has been disbursed out of such fund, it was the money which the bank had the right to pay out, and not the money which was intrusted to it in a fiduciary capacity."

■ This rule, however, would not include moneys on deposit in corresponding banks, because as to them there was no commingling of funds or property. The reason therefor is thus clearly stated by Judge Lurton in Board of Com'rs v. Strawn (C. C. A.) 157 F. 49, 52, 15 L. R. A. (N. S.) 1100:

"But the complainant assigns as error that the court did not extend this rule to the balances to the credit of the Galion Bank in banks with which it kept a deposit account. The balances to the credit of the Galion Bank in these banks which have been received by the receiver aggregate something over $6,000. The balances with these several banks was shifting from day to day during the currency of the tax deposit account. The credits given to the Galion Bank are shown to have sometimes come from collections, sometimes from proceeds of rediscounts, and sometimes from moneys sent from the vaults of the Galion Bank to these reserve or corresponding banks. On the other hand, the account was drawn against when exchange was sold and for other purposes. The trust fund is not traced into any of the rediscounts or collections, which in part made up the credits in these banks. That the moneys remitted were not out of the trust fund is to be presumed; for the presumption upon which equity acts in respect of the character of the funds drawn out of the mingled mass of money in the bank's vaults is that the bank drew out only its money, leaving in its vaults the money which it was obligated to retain and not

588

use for any private purpose. The court below was right in holding that no part of the money deposited with the corresponding banks and which has come to the receiver's possession has been identified."

The court below awarded interest at the legal rate from March 1, 1923, which according to the decree was the date of the filing of the bill of complaint. The date thus fixed is manifestly a clerical error, because March 1, 1923, antedated the deposits complained of by several months and the actual date of the filing of the complaint by three years. The error in this regard should have been corrected by motion in the court below; but it was error to allow interest at all prior to the final decree. This court so held in Merchants' Nat. Bank v. School Dist. No. 8, supra, and the ruling in that case is supported by the weight of authority. Butler v. Western German Bank (C. C. A.) 159 F. 116; Poisson v. Williams (D. C.) 15 F.(2d) 582; Smith Reduction Corporation v. Williams (D. C.) 15 F.(2d) 874. Such is the rule in the state of Montana. Guignon v. First Nat. Bank, 22 Mont. 140, 55 P. 1051, 1097.

The decree of the court below is reversed, with instructions to enter a decree in favor of the plaintiff below for the sum of $5,351.61, with interest at the legal rate from the date of the former decree, and for costs in that court. The appellants will recover costs in this court.