## CITY OF CASPER v. JOYCE ET AL.

(Nos. 2086, 2087; March 21, 1939; 88 Pac. (2d) 467)

(Rehearing denied July 11, 1939)

For the defendant, Central Surety and Insurance Corporation (Appellant in Case No. 2086 and respondent in Case No. 2087), there were briefs and an oral argument by *M. A. Kline* of Cheyenne, Wyoming.

· For the defendant, Leroy Joyce, (respondent in Case No. 2086 and appellant in Case No. 2087) *J. A. Greenwood* of Cheyenne submitted the case on the brief of

defendant, Central Surety and Insurance Corporation, by stipulation.

For the plaintiff, City of Casper, (respondent in both cases) there was a brief and an oral argument by *W. J. Wehrli* of Casper, Wyoming.

*M. A. Kline,* in reply.

RINER, Chief Justice.

These two cases are proceedings by direct appeal from a judgment of the district court of Laramie County. As they are based upon the same record and were briefed and argued together one opinion will suffice to dispose of both. For convenience the parties will

be referred to, the plaintiff and respondent, City of Casper, as the "City" or the "plaintiff," and the defendants below and appellants here, LeRoy Joyce, as the "Treasurer" or by his surname, and the Central Surety and Insurance Corporation of Kansas City, Missouri, a corporation, as the "surety." The facts material to be considered at this time would appear to be these:

Joyce was Treasurer of the City during the years 1930 and 1931. He was reappointed January 7, 1932, and served until August, 1933, when he resigned the office to accept other employment. During the two years first mentioned the surety on his official bond was the corporation above named, duly organized under the laws of the State of Missouri and properly qualified and authorized to do business in the State of Wyoming. This official bond of the Treasurer was conditioned that "if the said LeRoy Joyce shall well, truly and faithfully perform all official duties now required of him by law, and also all such additional duties as may be imposed on him by any law of the State subsequently enacted, and if he shall account for and pay over and deliver to the person or officer entitled to receive the same, all moneys or other property that may come into his hands as such City Treasurer then this obligation to be null and void; otherwise to remain in full force and effect."

Prior to the appointment of Joyce as Treasurer the City had, through formal compliance with the necessary legal requirements, issued and sold certain of its negotiable bonds, with attached interest coupons, these issues being put out for a number of municipal purposes and on different dates. These bonds, both the principal obligations and the interest coupons attached, were made payable either at the office of the Treasurer or at the "Banking House of Kountze Brothers in the City of New York, State of New York." At least one

of the bond issues of the City was made payable as to principal and interest at the office of Kountze Brothers only. The concern last mentioned was a co-partnership organized and doing business in the City of New York, State of New York, and could not be, and was never, qualified to act as a depository of city funds under the provisions of Chapter 92, W. R. S., 1931. No bond or security was ever at any time obtained by the Mayor and City Council of the City or the Treasurer from said partnership for moneys coming into the hands of the latter through the remittances presently to be mentioned.

Neither the Treasurer nor the City had in their possession a list of the names and addresses of the holders of these bonds and coupons put out under these various issues, and Joyce did not know what bonds or coupons, if any, would be presented at his office in the city for payment there. As a matter of fact, while he paid a few of them, practically all were presented to Kountze Brothers in New York City for collection and payment and were paid by the partnership from funds sent it by Joyce from time to time as it became necessary. When coupons were presented to the Treasurer for payment, and were paid by him, he would deduct the amount of such payments from his next remittance to Kountze Brothers. In paying these obligations of the City, Joyce, after consultation with its Mayor, City Council and attorney, followed the same course of procedure pursued by his predecessors in office.

As Treasurer of the City Joyce received moneys collected from different sources, such as taxes from the County Treasurer's office, fines, water rents, etc. These funds, upon receipt by him, were deposited in one or the other of the three banks located in the City of Casper which had been under the provisions of Chapter 92, W. R. S., 1931, formally designated by the Mayor

and City Council as depositories for the moneys belonging to the City.

Kountze Brothers customarily sent the treasurer a printed and typewritten form of notice shortly before any bonds or interest coupons fell due, directing his attention to the necessity of having moneys in their hands to meet the obligations. The last notice of this character sent by Kountze Brothers prior to their insolvency was transmitted to the Treasurer under date of September 8, 1931, calling his attention to the fact "that coupons from the following bonds: Waterworks, Sewer, Public Building" would be due and payable at the office of the said partnership on 'October 30.' " The notice pursuant to which the last remittance was made to Kountze Brothers, and presently to be mentioned, was not produced by the City at the trial of the case below, though demand therefor had been made by the defendants. Indeed, no other notices of this character were forthcoming though Joyce testified that they were placed in the files of the office of the Treasurer of the City as he received them.

For his own convenience Joyce had prepared a schedule listing the various bond issues of the City, the amount of interest due and payable thereon, and the dates when payment thereof should be made. Upon receiving the reminder notice aforesaid from Kountze Brothers, he would reconcile it with the schedule thus prepared and remit to them the required sums by New York drafts, sent so as to reach the partnership a short time before the bonds or coupons became due. These sums of money he withdrew by check or checks upon one or more of the three depository banks of the City, already mentioned, and purchased the New York exchange paper with them. The drafts were by Kountze Brothers duly endorsed to the order of a New York bank. Occasionally, instead of the Treasurer's check alone, city warrants signed by the Mayor, City Clerk

and Treasurer were used to obtain the New York drafts for these remittances.

Joyce, as a witness for the plaintiff in the action brought by it and upon which the present record is based, testified on cross-examination that the several sums of money in the hands of Kountze Brothers were only placed there for the purpose of paying outstanding bonds and interest coupons of the City due shortly thereafter, and that if all these bonds and coupons thus due and payable prior to October 13, 1931, the date on which Kountze Brothers failed, had been presented to the partnership for payment and paid, then there would have been no balance or sum of money in their possession at the time their insolvency occurred. However, there were always quite a number of these bonds and interest coupons which were not by their owners and holders promptly presented to Kountze Brothers for liquidation. As a result there was usually a balance of the City's funds, remitted as aforesaid, in the hands of Kountze Brothers to take care of overdue bonds and coupons.

In making the several remittances to New York City, as aforesaid, Joyce generally stated in his letters transmitting the drafts particularly how the remittances were to be used. Kountze Brothers knew at all times that the funds so sent to them and remaining in their possession were to be used for no other purpose whatsoever than to pay the various obligations of the City embodied in the sundry bonds and interest coupons presented to the partnership in accordance with the provisions thereof.

As already stated, Kountze Brothers became insolvent on October 13, 1931, and a receiver was appointed to take charge of its affairs. Thereafter the partnership was adjudged a bankrupt in the United States District Court for the Southern District of New York. On the date last mentioned the concern had received

and not paid out on account of its bonds and interest coupons funds of the City which had been remitted by Joyce, in the sum of $4,432.20, which had been sent to it by him in the manner and for the purposes hereinabove described.

In due course the City retained counsel located in New York City, who instituted proceedings to recover the sum last mentioned in the hands of the Bankruptcy Trustee, on the theory, as stated in the petition for their reclamation, signed and verified by the Treasurer on behalf of the City, "that the constitution and laws of the State of Wyoming permitted your petitioner and its officers to remit the aforesaid sums of money to the bankrupts only for the purpose or purposes aforesaid, and not otherwise, and it was, and had been at all times, understood and agreed by and between your petitioner that the sums so remitted should be held by the bankrupts as trust funds for the purpose or purposes aforesaid, and not otherwise, and not to be used by it, or them, as its or their own funds, or commingled with their own funds or that of any other person, firm or corporation in such manner as to impair or destroy the character of such remittances as trust funds in the hands of the bankrupts for the purposes aforesaid." There was also filed in the New York federal court a proof of debt, likewise signed and verified by the Treasurer in April, 1932, supplying a statement of special deposits made with Kountze Brothers by the City for the payment of the City's bonds and interest coupons, as above described, indicating the balance claimed to be due the City in the sum hereinbefore mentioned.

The efforts to recover the unexpended balance of moneys in the sum aforesaid proved fruitless, the Referee in Bankruptcy in the court above mentioned ruling, under date of June 13, 1934, that the City's claim should be dismissed as a claim to specific moneys

in the hands of the Bankruptcy Trustee, but that, as stated in the Referee's order concerning the matter the claim of the City "to specific monies represented by checks or drafts which were deposited by Kountze Brothers in the Central Hanover Bank and Trust Company of New York City on October 7, 1931, but not collected by said Bank until after October 7, 1931, or to specific monies deposited by Kountze Brothers in the said Central Hanover Bank and Trust Company after October 7, 1931, or to specific monies deposited by Kountze Brothers in any bank other than the Central Hanover Bank and Trust Company, and which came into the possession of the Trustee in Bankruptcy, shall not be affected by anything herein contained in so far as such claims or claims are made with respect to monies deposited by Kountze Brothers, as aforesaid, and which came into the possession of the Trustee in Bankruptcy."

It appears, however, from the record before us that the Treasurer's last remittance to Kountze Brothers before their insolvency took place had been made in a letter dated September 2, 1931, in the sum of $9,000, the draft for that sum being collected by Kountze Brothers on September 8th following, through the New York Clearing House. No claim was made by the City against Joyce or his surety for the moneys thus lost until after January 10, 1936.

The instant litigation was started by the City filing its petition to recover the sum of $4,432.20 from the Treasurer and his surety on March 18, 1936, in the district court of Laramie County, Wyoming. Issues were made up by the subsequent pleadings of the parties, the cause was tried to the court without the intervention of a jury, and a judgment rendered in favor of the City and against the treasurer and his surety, for the full amount thus sought to be recovered. Both the last mentioned parties have prosecuted ap-

peals from this judgment. Other pertinent facts will be mentioned as may be necessary in connection with the disposition of the points urged here in favor of and against said judgment.

It is the contention of the City that all the moneys sent by its Treasurer to Kountze Brothers were simply ordinary general deposits of funds in the hands of the partnership, establishing merely the relation of debtor and creditor between said City and Kountze Brothers and nothing more; and that such funds were not trust funds as claimed by the City in its petition in the bankruptcy court, as set forth above.

In the consideration of these arguments the following authorities are pertinent:

In Pontius, Supt. of Banks, v. Sears, Roebuck & Co., 16 Oh. App. 240, it was held that money deposited in a bank by a party to be applied by the bank in payment of a specific indebtedness of the depositor to a third party upon the happening of a certain condition, created a trust fund and the bank as trustee was required to retain the fund in trust for the discharge of such indebtedness.

In State ex rel. Good, Attorney General, v. Platte Valley State Bank of Scottsbluff, 130 Neb. 222, 264 N. W. 421, the court said:

"This court has held on numerous occasions that, where a deposit of funds is made in a bank for paying a specific debt of the depositor, and the bank fails or neglects to apply the fund to the purpose for which the deposit was made, and thereafter becomes insolvent, a trust arises." (Citing cases.)

It was held in Titlow v. Sundquist, (C. C. A. 9th Cir.) 234 Fed. 613, that where the plaintiff, in behalf of the mortgagor, deposited money in a bank for the purpose of discharging a mortgage indebtedness to another, and the bank made, though it retained, a cer-

tificate of deposit in favor of the mortgagee, and notified her thereof, the transaction was not a loan, but the bank held the money in trust for the mortgagee, and on its failure before execution thereof, the plaintiff could recover the sum deposited, as against general creditors of the bank.

The Court of Errors and Appeals of New Jersey in Borough of Deal v. Asbury Park & Ocean Grove Bank, 118 N. J. Eq. 297, 178 A. 790, held that a bank account opened and maintained by the Borough for the sole purpose of providing funds to meet accruing interest coupons and to cover the principal on outstanding bonds was a "special deposit" or "trust deposit," and not subject to pro rata dividend, as in case of general deposit, when the bank was taken over for liquidation.

3 Ruling Case Law 558, Section 185, declares the rule to be:

"In case of a special deposit of money, no title thereto passes to the bank as in case of a general deposit, but the bank holds it as bailee of the depositor, and has no right to commingle it with its general funds and use it as the funds of the bank. In other words, the bank holds it as a trust fund, and in case of the insolvency of the bank it may be recovered from the receiver if it can be identified."

Citing many authorities, 7 C. J. 632 says:

"In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor, and, if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit."

5 Michie, Banks and Banking, 635-637, Sec. 332, reads:

"A special deposit exists when money is given to a bank for a specific and particular purpose, such as the payment of a debt or to be paid to a particular person, or to pay a contractor for building a house, or to pay

the purchase price of property to the vendor upon the compliance with certain conditions."

See, also, 32 A. L. R. 950-951, note; 9 C. J. S. 572, Sec. 275; 86 A. L. R. 375, note.

That the person or corporation in whose hands moneys have been placed to pay certain obligations of the debtor is the agent of the latter, see Wagner v. Spaeth, 36 Wyo. 279, 254 P. 123; Lusk State Bank v. Town Council of Lusk, 48 Wyo. 547, 52 P. (2d) 413.

In view of these authorities and the facts hereinbefore detailed, we think that the City's position taken in the New York bankruptcy proceedings was the correct one; that the moneys remitted to Kountze Brothers by Joyce to pay the bonds and coupons of the City as they became due were trust funds in the hands of the partnership and could have been recovered in the hands of the Trustee in Bankruptcy if traceable.

The remittances made by Joyce to Kountze Brothers were, of course, made to pay certain debts of the City and for no other purpose whatsoever, and of this fact Kountze Brothers were at all times cognizant. That the trust funds must be traceable in the hands of the party from whom they are sought to be recovered see Lusk Development & Improvement Co. v. Giinther, 32 Wyo. 294, 232 P. 518.

It is argued that the Referee in Bankruptcy, through his order dismissing the claim of the City, decided that the moneys sent Kountze Brothers by the Treasurer were merely general deposits in the hands of the partnership, with the resultant relation of general debtor and creditor. We hardly think that this is so. A study of the order of the Referee, the significant portion thereof having been hereinabove quoted, convinces us that that official really held that the funds remitted to Kountze Brothers before October 7, 1931, were not capable of being traced into the hands of the Trustee in Bankruptcy. *If every* remittance received by

Kountze Brothers, both before and after October 7, 1931, were regarded by that official as general deposits, it would seem there would have been no necessity for making any distinction in his order of dismissal. Yet he indicated that remittances received after October 7, 1931, should be excepted from the operation of such order.

It is urged for the City, also that as Kountze Brothers was not, and could not be, a designated depository of the city funds under Chapter 92, W. R. S., 1931, the Treasurer and his surety were liable for placing the funds of the City in the hands of that concern which were lost through its insolvency. Many cases are called to our attention where it was held that if a public official deposited funds belonging to his principal in an unauthorized institution, when there is a depository law in force in the jurisdiction similar to that prevailing in this State, he and his surety on his official bond are liable to the principal if loss ensues. We are obliged to conclude that those cases should not be regarded as pertinent here. It is our view that Chapter 92, W. R. S., 1931, has no application to a state of facts such as are disclosed by the record in hand when surveyed in the light of all statutory provisions affecting the matter.

The several sections, 92-116, 92-118, and 92-124, found in that Chapter read in part:

§ 92-116. "Under this chapter the term 'proper governing board' shall be held to mean * * * * when applied to the deposit of the funds of a city or town, the mayor and council, or the mayor and trustees, as the case may be, of such city or town."

§ 92-118. "Every county treasurer, city treasurer, town treasurer, treasurer of a school district, and treasurer of an irrigation district or drainage district, within the state of Wyoming, shall deposit, and at all times keep on deposit for safe keeping, in banks incorporated under the laws of this state and in national

banks, doing business in his county, when designated as depositories by the proper governing board the amount of moneys in his hands collected and held by him as such treasurer."

§ 92-124. "Nor shall anything in this chapter prevent the proper treasurer from withdrawing any or all funds by him deposited in accordance with this chapter whenever he deems it advisable or to the interests of the public which he represents, or to pay out money as by law required."

Section 22-400, W. R. S., 1931, provides in part relative to the duties of treasurers of cities of the first class that "any due or overdue bond or coupon shall be sufficient warrant or order for the payment of the same by the treasurer out of any funds specifically created for that purpose, without any further order or allowance by the mayor or council."

Under Section 22-1601, W. R. S., 1931, each incorporated city in this State is vested with additional powers assigned it through some ten specific legislative grants. In Section 22-1605, W. R. S., 1931, the statute provides in part:

"Any incorporated city or town is hereby authorized to borrow money and issue coupon bonds in any amount not exceeding the limitation provided in § 22-1603, for the purpose or purposes enumerated in § 22-1601. Such bonds shall be of the denominations of one hundred, five hundred and/or one thousand dollars, as provided in the ordinance authorizing their issuance, and shall bear interest at a rate not exceeding six per centum per annum, payable annually or semi-annually at such place and in such manner as the municipal authorities may provide."

Section 22-1602, W. R. S., 1931, vesting additional powers in incorporated cities or towns in this State, for the purpose of issuing the coupon bonds of such city or town for the purpose of acquiring and purchasing supplies, equipment and apparatus for fire prevention and control and erecting, constructing or

purchasing buildings for housing such equipment and for the use of its fire department and town officers in the transaction of their official business, reads in part:

"Such bonds shall be of the denomination of five hundred dollars ($500.00) and shall bear interest at a rate not exceeding six per cent per annum, payable semi-annually, and at such place and manner as the municipal authorities may provide."

Section 22-1616 provides for the issuance of refunding bonds by cities and towns of the State and contains the provision:

"Said bonds shall be of such denominations as may be determined by the mayor and council by ordinance, and be numbered from one upward, payable within thirty years from the date of issue, and shall bear interest at a rate not exceeding six per centum per annum, payable semi-annually, as may be determined by the city or town council, at the office of the city or town treasurer, or at such other place or places as shall be designated by the city or town council."

Section 22-1701, W. R. S., 1931, provides for the issuance of air port bonds by any incorporated city or town in this State, and likewise provides for the place where they may be made payable in similar terms with Section 22-1602, supra.

It is plain from the foregoing excerpts from our statutory law that the Mayor and City Council of the City were authorized by repeated declarations of the State Legislature to make the City's bonds and the interest coupons connected therewith payable in such place as they saw fit and thus to indicate by proper ordinance to that effect. It is significant that no restrictions were imposed upon this power. It would seem that provisions of this character would vest the City with authority to make such obligations payable in New York City, the financial center of the nation. It is common knowledge that such provisions of law and

practice thereunder are not unusual, but customary, and are for the benefit of all parties concerned. Myer & Stucken v. City of Muscatine, 1 Wall. (U. S.) 384, 17 L. Ed. 564. It has been frequently held that in the absence of specific provision to the contrary municipalities possess power to make their bonds and interest coupons thereon payable without the state. See Town of Lancaster v. First National Bank of Lancaster, 80 S. C. 547, 61 S. E. 1025; Kalman v. Treasure County, 84 Mont. 285, 275 P. 743, and cases cited; 1 Jones, Bonds and Bond Securities, Sec. 235, P. 231, and cases cited; 44 C. J. 1224, Sec. 4200.

It is apparent that when these bonds and coupons of the City became due and payable, it was the duty of the Treasurer to pay them out of funds created for that purpose "without any further order or allowance by the mayor or council." It will be noted, also, that the depository law of the State specifically declares that it is not intended by its provisions that the "proper treasurer" shall be prevented from paying "out money as by law required." Of course, it plainly would be impossible for the treasurer of a city to keep the moneys in a duly designated depository in this State and also pay bonds and coupons legally made payable outside its borders. Ordinarily it is true, as stated in 59 C. J. 1042, that:

"Where two statutes are in apparent conflict, they should be so construed, if reasonably possible, as to allow both to stand and to give force and effect to each."

The real purpose of depository laws of the character now being considered is well stated in Davy v. Day et al., 31 N. M. 519, 247 P. 842, thus:

"The whole argument of appellant is based upon the provisions of section 10 of article 8 of the Constitution, which is as follows:

" 'All public moneys not invested in interest-bearing securities shall be deposited in national banks in this

state or in banks or trust companies incorporated under the laws of the state, and the interest derived therefrom shall be applied in the manner prescribed by law.'

"The argument is made that, in order to pay a bond, made payable at any place, it will be necessary to deposit public moneys at such place to effectuate that result. Therefore, it is argued, in order to pay a bond made payable at some bank in New York, for instance, it would be necessary to deposit the public funds with such bank for such purpose. This is clearly a misconception of the sense in which the word 'deposited' is used in the constitutional provision above quoted. The provision is one for the safe-keeping of the public funds while the same are not being used for the public purposes. It is not designed nor intended to hamper or prevent the doing of the business of this state according to the methods employed throughout the business world. To so hold would be to invalidate most, if not all, of the outstanding bonds of the state and its municipalities, which is a consequence not to be contemplated. The constitutional provision simply means that the public funds, when not so used, shall be deposited for safe-keeping in the institutions named in the provision; but, when they are required to meet the public obligations, they may be expended in a business way, and according to business methods and practices."

In passing it may be noted that the doctrine announced in the case of Los Angeles v. Teed, 112 Cal. 319, 44 P. 580, and disapproved by the New Mexico court, was subsequently annulled by an amendment to the California Constitution adopted November 6, 1906, in Section 13½ of Article XI thereof.

We are quite clear that the depository act of this State was not intended by the law-making body thereof to interfere with the power of the city to contract as to the place where its bonds and interest coupons were legally to be made payable, nor with the manner in which they were to be handled in that place. The cases of Patterson v. People, 98 Colo. 86, 53 P. (2d) 1187, and People v. Koenig, 99 Colo. 456, 63 P. (2d) 1235,

upon which the City so much relies, were decided upon facts decidedly different from those presented by the record before us, dissimilar statutes, and in a state possessing a line of decisions at variance with those of our State, viz., State v. Gramm, 7 Wyo. 329, 52 P. 533; Roberts v. County Commissioners, 8 Wyo. 177, 56 P. 915, concerning the measure of a treasurer's liability on his official bond. See State v. Walsen, 17 Colo. 170, 28 P. 1119; Gartley v. People, 24 Colo. 155, 49 P. 272; Gartley v. People, 28 Colo. 227, 64 P. 208.

It is further urged for the City that the Treasurer was negligent in his handling of the several remittances to Kountze Brothers for the purposes aforesaid in a number of particulars. First, it is said that he violated the provisions of the state depository law. What has already been said relative to that matter we deem sufficient to dispose of that point. Secondly, the suggestion is made that the Treasurer made the remittances to Kountze Brothers without exacting a bond or security from them. But the contracts with Kountze Brothers, as the fiscal agents of the City to pay its due and overdue bonds and interest coupons in New York City, had been made by the Mayor and City Council. The Treasurer had nothing whatever to do with dictating the terms of those contracts. The governing board of the City had exacted no bond or security from Kountze Brothers for the safe handling of the remittances to be sent them, were not required by law to do so, and we cannot perceive that the Treasurer was negligent in declining to interfere with the City's contracts in that respect, or in not attempting to make a special contract with Kountze Brothers at variance with those entered into by the city authorities duly constituted for that purpose. Thirdly, it is urged that the Treasurer sent moneys to Kountze Brothers an unreasonable time before they were due and payable to the City's creditors. Our examination of the record in these cases

leads us to think that, as testified to by Joyce, if all the bonds and interest coupons of the City had been presented to Kountze Brothers when due and such presentation had not been delayed, as many of them were, until many months afterwards, there would not have been any balance of moneys in the hands of Kountze Brothers on October 13, 1931, the date of their insolvency.

Finally, it is significant that the City concedes that it would have been quite proper for the Treasurer to have "by agreeemnt established a trust fund or special deposit in the hands of Kountze Brothers," and that in such event there would have been no loss of funds. But as we have seen, that is exactly what Joyce did do. Yet loss of the City's funds occurred. The trouble was obviously that Kountze Brothers did not segregate the moneys sent by the Treasurer from other remittances they received, as they were in duty bound to do with trust funds in their hands. It was no part of Joyce's duties to supervise the affairs of Kountze Brothers after they received the various remittances he sent them. Here, as we have seen, Kountze Brothers had been properly selected as fiscal agents of the City by its Mayor and City Council. Because the partnership thus selected for the performance of an important duty failed to live up to its contract to handle the trust funds remitted as they should have been, can, we think, hardly be chargeable as negligence against Joyce and his surety.

In City of Billings v. Massachusetts Bonding & Insurance Co. et al., 88 Mont. 91, 290 P. 246, it was held that a city treasurer was not liable for funds lost through a bank's failure where they were deposited in excess of depository bonds approved by the Council of the City under statutory authority. The law (Revised Codes, 1921, Sec. 4767, as amended by Laws 1923, Chapter 89) provided that it should be the duty of city

treasurers to deposit moneys in any solvent bank designated by the council of the city and that the treasurer should take from the banks such security as the council "may prescribe, approve and deem fully sufficient." Evidence in the case disclosed that the council had designated the particular bank involved but did not prescribe the amount of the bond which the treasurer should require.

Where the strict rule of liability on a treasurer's bond was urged as a reason for his asserted right to select a depository for public funds, in Stephens v. City of Ludlow, 159 Ky. 729, 169 S. W. 473, the court said:

"If the treasurer himself selected a depository, and the funds of the city were lost by any wrongdoing on the part of any of its officers or from other causes, the treasurer would be liable to the city for the funds, although he might have exercised the highest degree of care in selecting the depository. When, however, the selection of the depository is taken out of his hands, and he is directed by the city to keep its funds in an institution selected by it, the city, and not the treasurer, assumes responsibility for the integrity and solvency of the institution so selected. Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737."

In City of Scranton, Pa., v. Aetna Casualty & Surety Co., 11 Fed. Supp. 986, it was held that a city treasurer who deposited city money in banks designated by the council, was not liable for losses of city deposits occurring upon the failure of the designated banks where a mandatory statute required the treasurer to deposit receipts of his office in banks selected by the council, although there was no express provision in the statute relieving the treasurer of liability in such event. To the same effect is the later case of City of Scranton v. Aetna Casualty & Surety Co., 22 Fed. Supp. 247.

The case of City of Wagoner v. Case, 170 Okla. 577, 41 P. (2d) 669, decided that where a city charter im-

posed the duty on a commissioner of lights, water and sewerage to collect revenues arising from municipal electric lights and waterworks, but the city board of commissioners, also under authority of the city charter, had placed the duty of collecting such funds upon the city clerk, who was in another department of city government, the commissioner of lights, etc. should be held not personally liable for defalcations or failure of duty on the part of the city clerk.

When we apply the principles thus announced to the case at bar, we are unable to see that any liability should fall upon the City Treasurer and his surety. As has been repeatedly said, the Mayor and Council of the City, as they were authorized by law to do, having selected Kountze Brothers as the proper agency to whom the funds to pay the obligations of the City should be remitted by the Treasurer, and having never exacted a bond or other security for the safety of these remittances, as could have been done, Joyce and his surety should not be held for the carelessness of the agent thus designated. If the City's governing board at the time the bond issues were put out and the contracts with Kountze Brothers made had required of the latter a bond or security for the safe keeping of the funds subsequently to be remitted to the firm and eventually the bond or security had proven unreliable, would it be contended that the Treasurer and his surety should in such case be responsible? The Mayor and Council chose to have the funds sent to the partnership relying evidently upon the financial reputation thereof, which was apparently alone deemed sufficient. It turned out to be not so. The fault, if any there was, would seem to rest with the City.

Our conclusion is that the judgment of the district court should be reversed, with instructions to dismiss the action.

*Reversed.*

KIMBALL and BLUME, JJ., concur.